Lance N. Olitt, Esq. (LO 6193)
Mandelbaum, Salsburg,
Gold, Lazris & Discenza, P.C.
155 Prospect Avenue
West Orange, New Jersey 07052
(973) 736-4600
(973) 736-4670 – Facsimile
Attorneys for Plaintiff
MARTINES FRUITS & VEGETABLES, INC.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARTINES FRUITS & VEGETABLES, INC., a California Corporation, | Case No. 07cv 7082 |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| vs. | 1. **Breach of Contract/Bill of Lading (Damage to Cargo - APL)** |
| AMERICAN PRESIDENT LINES, LTD., a Delaware Corporation, ROBERT NAKO ENTERPRISES, INC, a California Corporation, dba YAMKO TRUCK LINES, and DOES 1 through DOES 25, inclusive, | 2. **Negligence (APL)** |
| | 3. **Breach of Contract/Bill of Lading (Damage to Cargo - Yamko)** |
| | 4. **Negligence (Yamko)** |
| Defendants. | 5. **Strict Liability (Yamko)** |

Plaintiff, MARTINES FRUITS & VEGETABLES, INC. alleges:

**JURISDICTION AND VENUE**

1.      This court has jurisdiction of this case pursuant to the Carriage of Goods by Sea Act of 1936 as revised [46 U.S.C. Section 30701] ("COGSA") and pursuant to 28 U.S.C. Sections 1331 and 1333. Venue is arguably proper pursuant to the forum selection clause of defendant American President Lines, Ltd.'s standard terms of and conditions on the Bill of

Lading on American President Lines, Ltd.'s website, a true and correct copy of which is attached as EXHIBIT K to this complaint.

## PARTIES

2.    Plaintiff MARTINES FRUITS & VEGETABLES, INC. ("Plaintiff") is a California Corporation duly organized, incorporated and existing under and by virtue of the laws of the State of California, with its principal place of business located at 11549 Los Osos Valley Road, San Luis Obispo, California, San Luis Obispo County, California.    Plaintiff is engaged primarily in the business of selling and marketing agricultural commodities, including peas. Some of the agricultural commodities marketed by Plaintiff are imported from other countries, including Peru.

3.    Upon information and belief, Defendant AMERICAN PRESIDENT LINES, LTD. ("APL") is a Delaware Corporation, duly organized and existing under and by virtue of the laws of the State of Delaware, with a principal business address of 1111 Broadway, Oakland, CA 94607.  APL regularly conducts substantial business operations within the State of California, and within the county of San Luis Obispo.  APL is in the business of shipping goods, including agricultural commodities, between foreign ports and ports within the United States and the State of California.

4.    Upon information and belief, Defendant ROBERT NAKO ENTERPRISES, INC., d.b.a YAMKO TRUCK LINES ("Yamko") is a California Corporation, duly organized and existing under and by virtue of the laws of the State of California, with its principal place of business at 6925 Cherry Ave., Long Beach, California. Yamko regularly conducts substantial business operations within the State of California, and within the county of San Luis Obispo. Yamko is in the business of transporting goods, including agricultural commodities, by truck

between locations within the United States and within the State of California.  Yamko is an inland common carrier of goods.

5.    Plaintiff is ignorant of the true names and capacities of the Defendants denominated herein as Does 1 through 25, inclusive, and so sues said Defendants under such fictitious names.  Plaintiff will amend this Complaint to set forth the true names and capacities of such Defendants once the same have become known to it.  Plaintiff is informed and believes and thereon alleges that each of these fictitiously named Defendants was at all relevant times the agent, servant or employee of APL or Yamko and acting in the course and scope of such agency, service or employment relationship in engaging in the conduct alleged herein, or that such defendants claim some right, title, estate, lien or interest in the hereinafter-described property adverse to Plaintiff's title to that property.

### SHIPMENT APL #90032620 / Yamko # 00145922

6.    On or about November 1, 2006, Plaintiff, as owner and consignee, by and through its authorized representatives and agents (Andean Produce and Ransa Logistics), delivered to APL certain cargo consisting of 3,520 boxes of peas.  Specifically, Plaintiff delivered to APL 740 boxes of Snow Peas and 2,816 boxes of Sugar Daddy Peas (with respect to this shipment, "the cargo").  The cargo was delivered to APL in Lima, Peru for transportation from the Port of Callao, Peru to the Port of San Pedro, California.  The cargo was transported under Bill of Lading Number 900032620, a copy of which is attached as EXHIBIT A to this Complaint.  APL agreed to transport the cargo at a temperature not to exceed + 2 degrees Celsius, with closed ventilation, 95% humidity, in a refrigerated container, and in a controlled atmosphere.

7.    Plaintiff, by and through its authorized representatives and agents, delivered the cargo to APL in good order and condition.  The cargo was loaded on to the vessel APL Balboa, V032.

8.    On or about November 14, 2006, the cargo arrived in San Pedro, California aboard the vessel APL Turquoise V072. Upon arrival in San Pedro, California, Plaintiff delivered the cargo to Defendant Yamko, who transported the cargo under Yamko Freight Bill # 00145922, which is attached as EXHIBIT F to this Complaint. Upon information and belief, the cargo was in good condition when it was received by Yamko. Yamko transported the cargo to Plaintiff at Guadalupe, California on November 16, 2006.    Yamko agreed and undertook to transport the cargo in refrigerated containers and to deliver the cargo in good order and condition.

9.    Upon arrival in Guadalupe, Plaintiff determined that the cargo was badly damaged and wholly unmarketable. The cargo did not arrive in good order and condition. On November 16, 2006, Plaintiff obtained an inspection of the cargo by a representative of the U.S. Department of Agriculture, who confirmed the damage to the cargo. Plaintiff then gave timely and prompt notification of the damage to the cargo to APL and provided APL with the opportunity to inspect the damage.

10.    The shipping container for the cargo contained a temperature recorder, placed in the container by Plaintiff and Plaintiff's agents prior to delivery of the cargo to APL. The temperature recordings were obtained by Plaintiff upon delivery of the cargo to Guadalupe, California on November 16, 2006. The recordings reflect that, for extended periods of time, while in the possession of APL and Yamko the cargo was transported at a temperature significantly above 2 degrees Celsius. The manner in which the cargo was handled by APL and Yamko was the cause of the damage to the cargo.

11.    On or about November 16, 2006 and for the period shortly thereafter the market price for Snow Peas from Peru was between $13.00 and $16.00 per carton. During that period of time, the market price for Sugar Snap Peas from Peru was approximately $18.00 per carton.

12.    As a result of the damage to the cargo shipped under APL Bill of Lading Number 900032620 and Yamko Freight Bill # 00145922, Plaintiff has suffered damages of approximately $62,528.00 dollars.

13.    Plaintiff, and its agents, performed all conditions precedent required by Bill of Lading Number 900032620 and required by Yamko Freight Bill # 00145922. Defendant APL has refused Plaintiff's Demands for payment for the cargo that was damaged.

### SHIPMENT APL # 90032627/ Yamko # 001459224

14.    On or about November 1, 2006, Plaintiff, as owner and consignee, by and through its authorized representatives and agents, delivered to APL certain cargo consisting of 3,520 boxes of peas. Specifically, Plaintiff delivered to APL 740 boxes of Snow Peas and 2,816 boxes of Sugar Daddy Peas (with respect to this shipment, "the cargo"). The cargo was delivered to APL in Lima, Peru for transportation from the Port of Callao, Peru to the Port of San Pedro, California. The cargo was transported by APL under Bill of Lading Number 900032627, a copy of which is attached as EXHIBIT B to this Complaint. APL agreed to transport the cargo at a temperature not to exceed + 2 degrees Celsius, with closed ventilation, 95% humidity, in a refrigerated container, and in a controlled atmosphere.

15.    Plaintiff, by and through its authorized representatives and agents, delivered the cargo to APL in good order and condition. The cargo was loaded on to the vessel APL Balboa, V032.

16.    On or about November 14, 2006, the cargo arrived in San Pedro, California aboard the vessel APL Turquoise V072. Upon arrival in San Pedro, California, Plaintiff delivered the cargo to Defendant Yamko, who transported the cargo under Freight Bill # 00145924, which is attached as EXHIBIT G to this Complaint. Upon information and belief, the cargo was in good condition when it was received by Yamko. Yamko transported the cargo to

Plaintiff at Guadalupe, California on or about November 16, 2006. Yamko agreed and undertook to transport the cargo in refrigerated containers and to deliver the cargo in good order and condition.

17.    Upon arrival at Guadalupe, Plaintiff determined that the cargo was badly damaged and wholly unmarketable. The cargo did not arrive in good order and condition. On November 20, 2006, Plaintiff obtained an inspection of the cargo by a representative of the U.S. Department of Agriculture, who confirmed the damage to the cargo. Plaintiff then gave timely and prompt notification of the damage to the cargo to APL and provided APL with the opportunity to inspect the damage. APL authorized Plaintiff to dispose of the entire shipment and Plaintiff disposed of the product.

18.    The shipping container for the cargo contained a temperature recorder, placed in the container by Plaintiff and Plaintiff's agents prior to delivery of the cargo to APL. The temperature recordings were obtained by Plaintiff upon delivery of the cargo to Guadalupe, California on November 16, 2006. The recordings reflect that, for extended periods of time, while in the possession of APL and Yamko, the cargo was transported at a temperature significantly above 2 degrees Celsius. The manner in which the cargo was handled by APL and Yamko was the cause of the damage to the cargo.

19.    On or about November 16, 2006 and for the period shortly thereafter the market price for Snow Peas from Peru was between $13.00 and $16.00 per carton. During that period of time, the market price for Sugar Snap Peas from Peru was approximately $18.00 per carton.

20.    As a result of the damage to the cargo shipped under APL Bill of Lading Number 900032620 and Yamko Freight Bill Number 00145924, Plaintiff has suffered damages of approximately $62,528.00 dollars.

21.    Plaintiff, and its agents, performed all conditions precedent required by Bill of Lading Number 900032627 and required by Yamko Freight Bill Number 001459224. Defendant APL has refused Plaintiff's demands for payment for the cargo that was damaged.

### SHIPMENT APL # 90032664 / Yamko # 00145934

22.    On or about November 1, 2006, Plaintiff, as owner and consignee, by and through its authorized representatives and agents, delivered to APL certain cargo consisting of 3,520 boxes of peas. Specifically, Plaintiff delivered to APL 1056 boxes of Snow Peas and 2,464 boxes of Sugar Daddy Peas (with respect to this shipment, "the cargo"). The cargo was delivered to APL in Lima, Peru for transportation from the Port of Callao, Peru to the Port of San Pedro, California. The cargo was transported under Bill of Lading Number 9000326264, a copy of which is attached as EXHIBIT C to this Complaint. APL agreed to transport the cargo at a temperature not to exceed + 2 degrees Celsius, with closed ventilation, 95% humidity, in a refrigerated container, and in a controlled atmosphere.

23.    Plaintiff, by and through its authorized representatives and agents, delivered the cargo to APL in good order and condition. The cargo was loaded on to the vessel APL Balboa, V032.

24.    On or about November 14, 2006, the cargo arrived in San Pedro, California aboard the vessel APL Turquoise V072. Upon arrival in San Pedro, California, Plaintiff delivered the cargo to Yamko Truck Lines, who transported the cargo under Yamko Freight Bill # 00145934, which is attached as EXHIBIT H to this Complaint. Upon information and belief, the cargo was in good condition at the time it was delivered to Yamko. Yamko then delivered the cargo to Plaintiff at Guadalupe, California on or about November 16, 2006. Yamko agreed and undertook to transport the cargo in refrigerated containers and to deliver the cargo in good order and condition.

25.    Upon arrival at Guadalupe, Plaintiff determined that the cargo was badly damaged and wholly unmarketable. The cargo did not arrive in good order and condition. On November 16, 2006, Plaintiff obtained an inspection of the cargo by a representative of the U.S. Department of Agriculture, who confirmed the damage to the cargo. Plaintiff then gave timely and prompt notification of the damage to the cargo to APL and provided APL with the opportunity to inspect the damage. Plaintiff subsequently disposed of the entire shipment.

26.    The shipping container for the cargo contained a temperature recorder, placed in the container by Plaintiff and Plaintiff's agents prior to delivery of the cargo to APL. The temperature recordings were obtained by Plaintiff soon after delivery of the cargo to Guadalupe, California on November 16, 2006. The recordings reflect that, for extended periods of time, while in the possession of APL and Yamko, the cargo was transported at a temperature significantly above 2 degrees Celsius. The manner in which the cargo was handled by APL and Yamko was the cause of the damage to the cargo.

27.    On or about November 16, 2006 and for the period shortly thereafter the market price for Snow Peas from Peru was between $13.00 and $16.00 per carton. During that period of time, the market price for Sugar Snap Peas from Peru was approximately $18.00 per carton.

28.    As a result of the damage to the cargo shipped under APL Bill of Lading Number 900032620 and Yamko Freight Bill # 00145934, Plaintiff has suffered damages of approximately $61,248.00 dollars.

29.    Plaintiff, and its agents, performed all conditions precedent required by Bill of Lading Number 9000326264 and as required by Yamko Freight Bill # 00145934. Defendant APL has refused Plaintiff's demands for payment for the cargo that was damaged.

## SHIPMENT APL # 90032677 / Yamko # 00145923

30.     On or about November 1, 2006, Plaintiff, as owner and consignee, by and through its authorized representatives and agents, delivered to APL certain cargo consisting of 3,520 boxes of peas. Specifically, Plaintiff delivered to APL 880 boxes of Snow Peas and 2,640 boxes of Sugar Daddy Peas (with respect to this shipment, "the cargo"). The cargo was delivered to APL in Lima, Peru for transportation from the Port of Callao, Peru to the Port of San Pedro, California. The cargo was transported under Bill of Lading Number 900032677, a copy of which is attached as EXHIBIT D to this Complaint. APL agreed to transport the cargo at a temperature not to exceed + 2 degrees Celsius, with closed ventilation, 95% humidity, in a refrigerated container, and in a controlled atmosphere.

31.     Plaintiff, by and through its authorized representatives and agents, delivered the cargo to APL in good order and condition. The cargo was loaded on to the vessel APL Balboa, V032.

32.     On or about November 14, 2006, the cargo arrived in San Pedro, California aboard the vessel APL Turquoise V072. Upon arrival in San Pedro, California, Plaintiff delivered the cargo to Yamko Truck Lines, who transported the cargo under Yamko Freight Bill # 00145923, which is attached as EXHIBIT I to this Complaint. Upon information and belief, the cargo was in good condition at the time it was delivered to Yamko. Yamko then delivered the cargo to Plaintiff at Guadalupe, California on or about November 16, 2006. Yamko agreed and undertook to transport the cargo in refrigerated containers and to deliver the cargo in good order and condition.

33.     Upon arrival at Guadalupe, Plaintiff determined that the cargo was badly damaged and wholly unmarketable. The cargo did not arrive in good order and condition. On November 16, 2006, Plaintiff obtained an inspection of the cargo by a representative of the U.S. Department

of Agriculture, who confirmed the damage to the cargo. Plaintiff then gave timely and prompt

notification of the damage to the cargo to APL and provided APL with the opportunity to inspect

the damage. APL authorized Plaintiff to dispose of the entire shipment and Plaintiff disposed of

the product.

34.    The shipping container for the cargo contained a temperature recorder, placed in

the container by Plaintiff and Plaintiff's agents prior to delivery of the cargo to APL. The

temperature recordings were obtained by Plaintiff upon delivery of the cargo to Guadalupe,

California on November 16, 2006. The recordings reflect that, for extended periods of time,

while in the possession of APL and Yamko, the cargo was transported at a temperature

significantly above 2 degrees Celsius. The manner in which the cargo was handled by APL and

Yamko was the cause of the damage to the cargo.

35.    On or about November 16, 2006 and for the period shortly thereafter the market

price for Snow Peas from Peru was between $13.00 and $16.00 per carton. During that period of

time, the market price for Sugar Snap Peas from Peru was approximately $18.00 per carton.

36.    As a result of the damage to the cargo shipped under APL Bill of Lading Number

900032620 and Yamko Freight Bill # 00145923, Plaintiff has suffered damages of

approximately $61,600.00 dollars.

37.    Plaintiff, and its agents, performed all conditions precedent required by Bill of

Lading Number 900032677 and required by Yamko Freight Bill # 00145923. Defendant APL

has refused Plaintiff's Demands for payment for the cargo that was damaged.

### SHIPMENT APL # 900032678 / Yamko # 00146002

38.    On or about November 8, 2006, Plaintiff, as owner and consignee, by and through

its authorized representatives and agents, delivered to APL certain cargo consisting of 3,520

boxes of peas. Specifically, Plaintiff delivered to APL 704 boxes of Snow Peas and 2,816 boxes

of Sugar Daddy Peas (with respect to this shipment, "the cargo"). The cargo was delivered to APL in Lima, Peru for transportation from the Port of Callao, Peru to the Port of San Pedro, California. The cargo was transported under Bill of Lading Number 900032678, a copy of which is attached as EXHIBIT E to this Complaint. APL agreed to transport the cargo at a temperature not to exceed + 2 degrees Celsius, with closed ventilation, 95% humidity, in a refrigerated container, and in a controlled atmosphere.

39.    Plaintiff, by and through its authorized representatives and agents, delivered the cargo to APL in good order and condition. The cargo was loaded on to the vessel APL Mendoza, V034.

40.    On or about November 21, 2006, the cargo arrived in San Pedro, California aboard the vessel MOL Ingenuity, V021. Upon arrival in San Pedro, California, Plaintiff delivered the cargo to Yamko Truck Lines, who transported the cargo under Yamko Freight Bill # 00146002, a copy of which is attached as EXHIBIT J to this Complaint. Upon information and belief, the cargo was delivered to Yamko in good condition. Yamko then transported the cargo to Plaintiff at Guadalupe, California on or about November 24, 2006. Yamko agreed and undertook to transport the cargo in refrigerated containers and to deliver the cargo in good order and condition.

41.    Upon arrival at Guadalupe, Plaintiff determined that the cargo was badly damaged and wholly unmarketable. The cargo did not arrive in good order and condition. On November 27, 2006, Plaintiff obtained an inspection of the cargo by a representative of the U.S. Department of Agriculture, who confirmed the damage to the cargo. Plaintiff then gave timely and prompt notification of the damage to the cargo to APL and provided APL with the opportunity to inspect the damage. APL authorized Plaintiff to dispose of the entire shipment and Plaintiff disposed of the product.

42.     The shipping container for the cargo contained a temperature recorder, placed in the container by Plaintiff and Plaintiff's agents prior to delivery of the cargo to APL. The temperature recordings were obtained by Plaintiff upon delivery of the cargo to Guadalupe, California on November 24, 2006. The recordings reflect that, for extended periods of time, while in the possession of APL and Yamko, the cargo was transported at a temperature significantly above 2 degrees Celsius. The manner in which the cargo was handled by APL and Yamko was the cause of the damage to the cargo.

43.     On or about November 27, 2006 and for the period shortly thereafter the market price for Snow Peas from Peru was between $14.00 and $15.00 per carton. During that period of time, the market price for Sugar Snap Peas from Peru was approximately $18.00 per carton.

44.     As a result of the damage to the cargo shipped under APL Bill of Lading Number 9000326278 and Yamko Freight Bill # 00146002 Plaintiff has suffered damages of approximately $61,248.00 dollars.

45.     Plaintiff, and its agents, performed all conditions precedent required by Bill of Lading Number 900032678 and as required by Yamko Freight Bill # 00146002. Defendant APL has refused Plaintiff's Demands for payment for the cargo that was damaged.

**OTHER FACTS**

46.     Some or all of the cargo shipments referenced herein were examined, soon after their receipt by Plaintiff, by an investigator retained by APL, Captain Arun K Jolly. Captain Jolly informed Plaintiff that he believed the damage caused to the shipments was the result of malfunctioning ethelene scrubbers on the vessels utilized by APL.

47.     Plaintiff paid APL more than $30,000.00 for the services provided by APL in shipping the cargo identified in Bills of Lading Numbers: 90032620, 90032664, 90032627 90032677, and 900032678.

48.    Plaintiff paid Yamko approximately $5,150.00 for the services provided by Yamko in shipping the cargo identified in Yamko Freight Bill #'s 00145922, 00145924, 00145934, 00145923 and 00146002.

49.    As to Yamko Freight Bill #'s 00145922, 00145924, 00145934, 00145923 and 00146002, and each of them, Defendant Yamko was an inland common carrier for reward.

## FIRST CAUSE OF ACTION

(Breach of Contract – Bill of Lading Against Defendant APL)

50.    Plaintiff re-alleges and incorporates herein the allegations contained in paragraphs 1- 49, above, as if as though they were set forth in full herein.

51.    On or about November 2006, in Lima, Peru, Plaintiff delivered five (5) container loads of peas to APL for shipment to the State of California.

52.    Plaintiff and APL entered separate contracts with regard to each load, the terms of which are set forth in Bills of Lading Numbers: 90032620, 90032664, 90032627 90032677, and 900032678.

53.    Defendant APL materially breached each of these contracts.  APL breached the contracts in numerous respects, including but not limited to the following particulars:

a.    By failing to deliver the cargo in good order and condition.

b.    By failing to make the holds, refrigeration and cooling chambers and other parts of the ships in which the cargo was carried fit and safe for the reception, carriage and preservation of the cargo.

c.    By failing to maintain the proper and agreed upon temperature of the cargo.

d.    By failing to maintain the proper operation of the ethelene scrubbers on the vessels and/or containers at issue.

e.  By failing to carefully load, handle, stow, carry, keep, care for and discharge the cargo at issue.

f.  By failing to maintain the proper ventilation, humidity and atmospheric control of the cargo

54.  As a result of APL's breach of the contracts, and each of them, Plaintiff's cargo, peas, suffered damages which made the cargo unmarketable.

55.  As a result, Plaintiff suffered economic damages in excess of $300,000.00, in an amount to be proven at trial.

56.  Plaintiff has fully performed its obligations under each of the contracts/Bills of Lading.

## SECOND CAUSE OF ACTION

### (Negligence -Against Defendant APL)

57.  Plaintiff re-alleges and incorporates herein the allegations contained in paragraphs 1- 56, above, as if as though they were set forth in full herein.

58.  On or about November 2006, in Lima, Peru, Plaintiff delivered five (5) container loads of peas to APL for shipment to the State of California.

59.  Plaintiff and APL entered separate contracts with regard to each load, the terms of which are set forth in Bills of Lading Numbers: 90032620, 90032664,90032627 90032677, and 900032678.

60.  Defendant APL materially breached each of these contracts.  APL breached the contracts in numerous respects, including but not limited to the following particulars:

a.  By failing to deliver the cargo in good order and condition.

b.  By failing to transport the cargo in trucks fit and safe for the reception, carriage and preservation of the cargo.

- 14 -

c.    By failing to maintain the proper and agreed upon temperature of the cargo.

d.    By failing to carefully load, handle, stow, carry, keep, care for and discharge the cargo at issue.

e.    By failing to maintain the proper ventilation, humidity and atmospheric control of the cargo.

f.    By failing to take proper measures for preservation of perishable goods in transit.

g.    By failing to maintain the proper operation of the ethelene scrubbers on the vessels and/or containers at issue.

61.    As a result of APL's breach of the contracts, and each of them, Plaintiff's cargo, peas, suffered damages which made the cargo unmarketable.

62.    As a result, Plaintiff suffered economic damages in excess of $300,000.00, in an amount to be proven at trial.

63.    Plaintiff has fully performed its obligations under each of the contracts/Bills of Lading.

### THIRD CAUSE OF ACTION

(Breach of Contract – Against Defendant Yamko)

64.    Plaintiff re-alleges and incorporates herein the allegations contained in paragraphs 1- 63, above, as if as though they were set forth in full herein.

65.    On or about November 14, 2006 and November 21, 2006, in San Pedro, California, Plaintiff delivered a total of five (5) container loads of peas to Yamko for shipment to Guadalupe, California.

66.     Plaintiff and Yamko entered separate contracts memorialized by Yamko Freight Bill #'s 00145922, 00145924, 00145934, 00145923 and 00146002, with regard to each load of peas.

67.     Defendant Yamko materially breached each of these contracts. Yamko breached the contracts in numerous respects, including but not limited to the following particulars:

a.      By failing to deliver the cargo in good order and condition.

b.      By failing to transport the cargo in trucks fit and safe for the reception, carriage and preservation of the cargo.

c.      By failing to maintain the proper and agreed upon temperature of the cargo.

d.      By failing to carefully load, handle, stow, carry, keep, care for and discharge the cargo at issue.

e.      By failing to maintain the proper ventilation, humidity and atmospheric control of the cargo.

f.      By failing to take proper measures for preservation of perishable goods in transit.

g.      By failing to exercise proper care and diligence to protect the cargo.

68.     As a result of Yamko's breach of the contracts, and each of them, Plaintiff's cargo, peas, suffered damages which made the cargo unmarketable.

69.     As a result, Plaintiff suffered economic damages in excess of $300,000.00, in an amount to be proven at trial.

70.     Plaintiff has fully performed its obligations under each of the contracts/Bills of Lading.

**FOURTH CAUSE OF ACTION**

(Negligence – Defendant Yamko)

71.    Plaintiff re-alleges and incorporates herein the allegations contained in paragraphs 1- 70, above, as if as though they were set forth in full herein.

72.    On or about November 14, 2006 and November 21, 2006 in San Pedro, California, Plaintiff delivered a total of five (5) container loads of peas to Yamko for shipment to Guadalupe, California.   The loads were identified by Yamko Freight Bill #'s 00145922, 00145924, 00145934, 00145923 and 00146002.

73.    Defendant Yamko negligently handled Plaintiff's container loads of peas, and each of them, in numerous respects, including but not limited to the following particulars:

   a.    By failing to deliver the cargo in good order and condition.

   b.    By failing to transport the cargo in trucks fit and safe for the reception, carriage and preservation of the cargo.

   c.    By failing to maintain the proper and agreed upon temperature of the cargo.

   d.    By failing to carefully load, handle, stow, carry, keep, care for and discharge the cargo at issue.

   e.    By failing to maintain the proper ventilation, humidity and atmospheric control of the cargo.

   f.    By failing to take proper measures for preservation of perishable goods in transit.

   g.    By failing to exercise proper care and diligence to protect the cargo.

74.    As a direct and proximate result of Yamko's negligence, Plaintiff's cargo, suffered damages which made the cargo unmarketable.

75. As a result, Plaintiff suffered economic damages in excess of $300,000.00, in an amount to be proven at trial.

### FIFTH CAUSE OF ACTION

(Strict Liability – Defendant Yamko)

76. Plaintiff re-alleges and incorporates herein the allegations contained in paragraphs 1- 75, above, as if as though they were set forth in full herein.

77. On or about November 14, 2006 and November 21, 2006 in San Pedro, California, Plaintiff delivered a total of five (5) container loads of peas to Yamko for shipment to Guadalupe, California. The loads were identified as Yamko Freight Bill #'s 00145922, 00145924, 00145934, 00145923 and 00146002. With regard to each of these shipments, Yamko served as an inland common carrier for reward.

78. Upon information and belief, each shipment was delivered to Yamko in good condition.

79. At the time each shipment was delivered to Plaintiff is was damaged and unmarketable.

80. As a result, Plaintiff suffered economic damages in excess of $300,000.00, in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment, on each Cause of Action, as follows:

1. For compensatory damages, in an amount exceeding $300,000.00; the precise amount to be determined according to proof at trial.

2. For pre-judgment interest on an amount exceeding $300,000.00 from and after November 16, 2006, at the rate of 10 percent per annum.

3.    For reasonable attorney fees and costs of suit herein incurred; and

4.    For such other and further relief as the court may deem proper.

Dated: August 8,  2007                    MANDELBAUM, SALSBURG,
                                          GOLD, LAZRIS & DISCENZA, P.C.


                                   By: _____
                                          Lance N. Olitt (LO 6193)
                                          Attorneys for Plaintiff
                                          MARTINES FRUITS & VEGETABLES

- 19 -

# EXHIBIT A

**APL**

**BILL OF LADING**

SHIPPER (Principal or Sales licensee and full address)

ARDEAN PRODUCE S.A.C.
CALLE AYACUCHO # 335, MIRAFLORES
TEL. 4459845 FAX 2412615
RUC 20509896314

BOOKING NUMBER
900032620

EXPORT REFERENCES
O/S 33349

B/L PAGE    1    OF    1
APLU 900032620

CONSIGNEE (Mail and Fax Address / Non-Negotiable Unless Consigned to Order)
(Unless provided otherwise a consignment "to Order" means To Order of Shipper)

MARTINEZ FRUIT & VEGETABLE
11949 LOS OSOS VALLEY ROAD SAN LUIS
CA.93401
TEL. 805 549 8008
FAX. 805 549 0457

FORWARDING AGENT (References, FMC No.)

RANSA COMERCIAL S.A.

POINT AND COUNTRY OF ORIGIN OF GOODS

CALLAO, PERU

NOTIFY PARTY (Name and Full Address)

J & K FRESH LLC
9911 INGLEWOOD AVENUE, SUITE #200
INGLEWOOD CA. 90301-3600
PH: 310-419-8770 FAX: 310-419-8790
CONTACTO: IRMA MEDINA

ALSO NOTIFY (Name and Full Address) DOMESTIC ROUTING/
EXPORT INSTRUCTIONS/PIER TERMINAL/ONWARD ROUTING/
FROM POINT OF DESTINATION

INITIAL CARRIAGE (Mode)

PLACE OF RECEIPT

CALLAO, PERU

EXPORT CARRIER (Vessel Voyage & flag)
APL BALBOA    032

PORT OF LOADING
USA CALLAO, PERU

COPY NON-NEGOTIABLE
COLLECT

PORT OF DISCHARGE
SAN PEDRO, CA

PLACE OF DELIVERY
SAN PEDRO, CA

Excess Valuation Please refer to Clause 7 (4) on Reverse Side    **PARTICULARS FURNISHED BY SHIPPER**    Payment by Cheque must be made to the order of APL Co. Pte l

| MARKS & CONTAINER NOS. | NO. OF PKGS. | DESCRIPTION OF PACKAGES & GOODS | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|
| FCL/FCL CRXU 820015-6 SEAL: G41518 | 3520 | FREIGHT COLLECT BOXS - PE) LVU5400.03.02  SLAC CY/CY X40 RE CONTAINER 04 PALLETS WITH 704 BOXES - SNOW PEAS 16 PALLET WITH 2016 BOXES- SUGAR DADDY TOTAL: 20 PALLETS WITH 3,520 BOXES  TEMPERATURE  : + 1 C VENTILATION   : CLOSED HUMIDITY      : 95 % CONTROLLED ATMOSPHERE  FREIGHT COLLECT | 16460.000KG 16288.045LB | 40.000M. 1412.586CF |

```
****CTR NBR*** ****SEAL NBR****    T/S      MODE      QUANT/TYPE
CRXU820015-6 G41518              R40      CY/ CY    3520BOXS
```

****** APL COPY ****
** ** NON-NEGOTIABLE *

B/L TO BE RELEASED AT
LIA

THESE RATES CHARGES WEIGHTS AND/OR
MEASURE NON-APPLICABLE TO CONTRACTORS

OCEAN FREIGHT PAYABLE AT

| PREPAID US $ | COLLECT U.S $ | Local Currency |
|---|---|---|

AMERICAN PRESIDENT
LINES, LTD.

By
Authorized Signature
Date and    NOV. 01, 200
Place signed    LIMA, PE

| LBB-452 Vessel | Voyage | Office | TOTAL PREPAID TOTAL COLLECT | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| FCE | 00121307 FORWARDER | 000632640 SHIPPER | 000000000 CONSIGNEE | CLA LD. PORT | SP1 DIS. PORT | SPO DEST | NOTIFY | Y CSC | APLU 900032620 B/L NUMBER |

* APPLICABLE ONLY WHEN USED AS MULTI MODAL BILL OF LADING

Date: 11/14/2006   Time: 3:11 AM   To: 18055490467 @ 18055490467
annel 5            Page: 001                                              Ch

AMENDED 0211 06

**APL**

NOTICE OF ARRIVAL AND FREIGHT CHARGES

| | |
|---|---|
| SHIPPER (Principal or Seller) | ANDEAN PRODUCE S.A.C.<br>CALLE AYACUCHO # 335, MIRAFLORES<br>RUC 20509696314 |

BILL OF LADING NO APLU 900032620 Y/X SIAC   ESTIMATED date of ARRIVAL at Dest   11/14/06

CUSTOM ENTRY INFORMATION

GO DATE IS 15 DAYS FM VESSEL ARR FOR CAD
& 15 DAYS FM ARR INLAND FOR INBOND

CONSIGNEE (C) (Non-Negotiable unless consigned to order)
MARTINEZ FRUIT & VEGETABLE
11549 LOS OSOS VALLEY ROAD SAN LUIS
FAX  805 549 0467

NOTIFY PARTY (NP) / INTERMEDIATE CONSIGNEE
J & K FRESH LLC
9911 INGLEWOOD AVENUE, SUITE #200
CONTACTO: IRMA MEDINA

ALSO NOTIFY PARTY (ANP)

ARRIVING VESSEL  APL TURQUOISE , V072
Vessel ETA  11/14/06        FLAG  U.S.A. SERVICE/TYPE  LOC
ORIGIN LOAD VESSEL  APL BALBOA , V032    VIA/LAST FOREIGN PORT  MANZANILLO INT T
DATE EXPORTED  11/01/06     PORT OF ORIGIN  CALLAO, PERU
PORT OF DISCHARGE  SAN PEDRO, CA US    FROM COUNTRY of ORIGIN  PERU    DESTINATION  SAN PEDRO, CA

ARRIVING LOCATION
     CALL APL CUSTOMER SERVICE AT (800) 999-7733
     FOR ARRIVING LOCATION INFORMATION

FOR CARGO AVAILABILITY     FOR CARGO AVAILABILITY AND SHIPMENT STATUS,
     CALL EAGLELINK AT (800) 2EAGLE1
     FOR APL CUSTOMER SERVICE, CALL (800) 999-7733

SPECIAL INSTRUCTIONS

LEAD MARKS     CONTAINER NUMBER(S)
FCL/FCL        CRLU8200156 G41518
CRLU 820015-6
SEAL: G41518

DESCRIPTION OF GOODS (Refer to Original BL for full description)
1X40'RF CONTAINER
04 PALLETS WITH 704  BOXES - SNOW
PEAS

3520PCES          16460KG        40.000M3

| FREIGHT RATE CHARGES, WEIGHT AND/OR MEASUREMENTS (SUBJECT TO CORRECTION) | | PREPAID | COLLECT | |
|---|---|---|---|---|
| | 1VA 4090.00/VAN | | 4090.00 | |
| ATM | US$ 1700.00/EA | | 1700.00 | |
| BAF | US$  310.00/EA | | 310.00 | |
| IFS | US$  200.00/EA | | 200.00 | |
| CSC | US$  100.00/EA | | 100.00 | |

CHECKS ARE PAYABLE TO APL 116 Inverness
Drive East, Suite 400, Englewood, CO 80112, Attn: Freight
Cashier
If you have questions, please contact Denver Customer
Center 1-800-999-7733. Voice Mail for Fax number changes:
(770) 395-8231

VESSEL VOYAGE  1B2 032  US$     TOTALS→     6400.00

On Store Door Delivery moves controlled by APL trucking, please notify your local APL office in writing of empty container availability (not the trucker) in order to stop per diem charges. Please contact APL Customer Service at 800-999-7733 for local email addresses.

## IMPORTANT DELIVERY INSTRUCTIONS

Thank you for shipping with APL. This notice is given to APL importers and associates to expedite delivery. If original bills of lading were issued, we ask that you surrender one of the original bills, properly endorsed, to the following APL address closest to your geographical location. APL, LTD. 116 Inverness Dr. East Ste 400 Englewood, CO, 80112, APL, LTD. 100 Central Ave. Bldg 40C South Kearny, NJ 07032 or APL, LTD. 180 E. Ocean Blvd., Suite 800, Long Beach, CA 90802. To obtain the release of your goods, make payment of all outstanding freight and other charges due (demurrage, storage, fumigation, etc.). Please note cargo is subject to local Customs' jurisdiction and practice.

You are requested to arrange for the prompt delivery of your cargo. By doing so, you will avoid any unnecessary cargo and equipment detention costs. If incurred, these costs (DEMURRAGE/STORAGE CHARGES) will be assessed in accordance with the applicable tariff for any delays after expiration of free time. These charges must be paid before cargo can be released. Demurrage rates and free time assessment can be provided by calling an APL Customer Service Representative at 800-999-7733. Please also refer to Clause 15 on the reverse side of the original Bill of Lading regarding the disposition of any undelivered goods.

## CARRIER'S CERTIFICATE

The undersigned carrier bringing the within described merchandise to this port, hereby certifies that this copy or extract of the Bill of Lading is genuine and may be used for the purpose of making Customs entry as provided for the Tariff Act of 1930.

*John W. Allen*

John W. Allen
Director, Customer Service, North America
APL

overnite     ✓# 2 1474                    $6400 —

# EXHIBIT B

**APL**

**BILL OF LADING**

SHIPPER (Principal or Seller Forname and full address)
ANDEAN PRODUCE S.A.C.
CALLE AYACUCHO # 335, MIRAFLORES
TEL. 4459845 FAX 2412611
RUC 20509896314

BOOKING NUMBER
900032627

B/L NUMBER
APLU 900032627

EXPORT REFERENCES
O/S 39345

CONSIGNEE (Name and full address)
MARTINEZ FRUIT & VEGETABLE
11549 LOS OSOS VALLEY ROAD SAN LUIS
CA.93401
TEL. 805 549 8608
FAX 805 549 0467

FORWARDING AGENT (References F.M.C. No.)
RANSA COMERCIAL S.A.

POINT AND COUNTRY OF ORIGIN OF GOODS
CALLAO, PERU

NOTIFY PARTY (Name and full address)
J & K FRESH LLC
8911 INGLEWOOD AVENUE, SUITE E200
INGLEWOOD CA, 90301-3600
PH: 310-419-8770 FAX: 310-419-8790
CONTACTO: IRMA MEDINA

INITIAL CARRIAGE (MODE)

EXPORT CARRIER (Vessel voyage & flag)
APL BALBOA    032    USA CALLAO, PERU

PLACE OF RECEIPT
CALLAO, PERU

PORT OF LOADING

**COPY**    **COLLECT**

PORT OF DISCHARGE
SAN PEDRO, LA

PLACE OF DELIVERY
SAN PEDRO, CA

| MKS & NOS/CONTAINER NOS. | NO. OF PKGS | PARTICULARS FURNISHED BY SHIPPER | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|
| FCL/FCL APRU 507520-4 SEAL: G41632 | 3520 | FREIGHT COLLECT BOXS PEILV05400.03.02 3LAC CY/CY 1X40' RF CONTAINER 16 PALLETS WITH 2816 BOXES SUGAR DADDY 04 PALLETS WITH 704 BOXES SNOW PEAS TOTAL: 20 PALLETS WITH 3,520 BOXES TEMPERATURE : + 2 C VENTILATION : CLOSED HUMIDITY : 95 % CONTROLLED ATMOSPHERE FREIGHT COLLECT | 16840.000KG 37125.801LB | 40.000M 1412.588CF |

***CTR NBR*** ***SEAL NBR*** T/S MODE QUANTY/TYPE
APRU507520-4 G41632 R40 CY/CY 3520BOXS

AMERICAN PRESIDENT LINES, LTD.

L, Inc.
Page: 003

**APL**          **ILL OF LADING**                # : 032627
                                                1_/14/06  SVW

| SHIPPER (Principal or Seller license and full address) | PAGE | B/L NUMBER |
|---|---|---|
| ANDEAN PRODUCE S.A.C.<br>CALLE AYACUCHO # 335, MIRAFLORES<br>TEL. 4459845 FAX 2412613<br>RUC 20509896314 | 2 OF . 2 | APLU 900032627 |

EXPORT REFERENCES
O/S 33345

| CONSIGNEE (Name and Full Address /Non-Negotiable Unless Consigned to Order.)<br>(Unless provided otherwise, a consignment "To Order means To Order of Shipper.) | FORWARDING AGENT (References, F.M.C. No.) |
|---|---|
| MARTINEZ FRUIT & VEGETABLE<br>11549 LOS OSOS VALLEY ROAD SAN LUIS<br>CA.93401<br>TEL. 805 549 8008<br>FAX  805 549 0467 | RANSA COMERCIAL S.A. |

POINT AND COUNTRY OF ORIGIN OF GOODS
CALLAO, PERU

| NOTIFY PARTY/INTERMEDIATE CONSIGNEE (Name and Full Address) | ALSO NOTIFY (Name and Full Address)/DOMESTIC ROUTING/EXPORT INSTRUCTIONS/<br>PIER — TERMINAL/ONWARD ROUTING FROM PONT OF DESTINATION |
|---|---|
| J & K FRESH LLC<br>9911 INGLEWOOD AVENUE, SUITE #200<br>INGLEWOOD CA, 90301-3600<br>PH: 310-419-8770 FAX: 310-419-8790<br>CONTACTO: IRMA MEDINA | |

| INITIAL CARRIAGE (MODE)* | PLACE OF RECEIPT* |
|---|---|
| | CALLAO, PERU |

| EXPORT CARRIER (Vessel, voyage, & flag) | PORT OF LOADING |
|---|---|
| APL BALBOA     032 | USA CALLAO, PERU |

| PORT OF DISCHARGE | PLACE OF DELIVERY* |
|---|---|
| SAN PEDRO,LA | SAN PEDRO, CA |

Excess Valuation Please refer to Clause 7III) on Reverse Side       PARTICULARS FURNISHED BY SHIPPER       Payment by Cheque must be made to the order of APL Co.,Pte Ltd

| MKS. & NOS./CONTAINER NOS. | NO. OF PKGS. | H.M | DESCRIPTION OF PACKAGES AND GOODS | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|---|
| ***CTR NBR*** ****SEAL NBR**** T/S | | | MODE | QUANT/TYPE | |
| APRU507520-4   G41632 | | | R40<br>CY/CY | 3520BOXS | |

| | FREIGHT RATES CHARGES, WEIGHTS AND/OR<br>MEASUREMENTS (SUBJECT TO CORRECTION) | | OCEAN FREIGHT PAYABLE AT | | | |
|---|---|---|---|---|---|---|
| B/L TO BE RELEASED AT | | | PREPAID U.S. $ | COLLECT U.S. $ | Local Currency | The undersigned Carrier hereby acknowledges receipt of the sealed container or packages or other shipping units said to contain the Goods described above in apparent external good order and condition unless otherwise stated. The Shipper agrees, and the Consignee and every person purchasing this instrument for value, if negotiable, or otherwise having an interest in the Goods is advised that the receipt, custody, carriage and delivery of the Goods are subject to all the terms and conditions set forth and by incorporated by reference on this side and the reverse hereof, whether written, stamped or printed. |
| OCF | 1VN | 4090/VAN | | | | |
| ATM | US$ | 1700/EA | | 4090.00 | | |
| BAF | US$ | 310/EA | | 1700.00 | | |
| IFS | US$ | 200/EA | | 310.00 | | |
| CSC | US$ | 100/EA | | 200.00 | | |
| CEX | US$ | 120 | | 100.00 | | |
| | | | | 120.00 | | |

A set of  0    originals of this bill of lading is hereby issued by the Carrier. Upon surrender to the Carrier of any one negotiable bill of lading, properly endorsed, all others shall stand void.

| 1BB 032 | | TOTAL/PREPAID | | | |
|---|---|---|---|---|---|
| Vessel | Voyage | TOTAL COLLECT | SPO | | |

BL number: APLU 900032627              Date: NOV. 01,2006
                                       Place Issued: LIMA, PE        **American President Lines, Ltd., The Carrier**
THANK YOU FOR SHIPPING AMERICAN PRESIDENT LINES, LTD.                                      BILL OF LADING COMPLETE

                               6520.0  0

** Proof Read Copy **

**APL**                **BILL OF LADING**                # : 032627
                                                          11/14/06  SVW

| SHIPPER (Principal or Seller licensee and full address) | PAGE | | B/L NUMBER |
|---|---|---|---|
| ANDEAN PRODUCE S.A.C. | 1 OF 2 | | APLU 900032627 |
| CALLE AYACUCHO # 335, MIRAFLORES | EXPORT REFERENCES | | |
| TEL. 4459845 FAX 2412613 | O/S 33345 | | |
| RUC 20509896314 | | | |

CONSIGNEE (Name and Full Address / Non-Negotiable Unless Consigned to Order.)
(Unless provided otherwise, a consignment "To Order means To Order of Shipper)

MARTINEZ FRUIT & VEGETABLE
11549 LOS OSOS VALLEY ROAD SAN LUIS
CA. 93401
TEL. 805 549 8008
FAX  805 549 0467

FORWARDING AGENT (References, F.M.C. No.)
RANSA COMERCIAL S.A.

POINT AND COUNTRY OF ORIGIN OF GOODS
CALLAO, PERU

NOTIFY PARTY/INTERMEDIATE CONSIGNEE (Name and Full Address)

J & K FRESH LLC
9911 INGLEWOOD AVENUE, SUITE #200
INGLEWOOD CA, 90301-3600
PH: 310-419-8770 FAX: 310-419-8790
CONTACTO: IRMA MEDINA

ALSO NOTIFY (Name and Full Address)/DOMESTIC ROUTING / EXPORT INSTRUCTIONS/
PIER — TERMINAL/ONWARD ROUTING FROM PORT OF DESTINATION

| INITIAL CARRIAGE (MODE)* | PLACE OF RECEIPT* |
|---|---|
| | CALLAO, PERU |
| EXPORT CARRIER (Vessel, Voyage, & flag) | PORT OF LOADING |
| APL BALBOA        032  USA | CALLAO, PERU |
| PORT OF DISCHARGE | PLACE OF DELIVERY* |
| SAN PEDRO, LA | SAN PEDRO, CA |

Excess Valuation Please refer to Clause 7 (II) on Reverse Side     Payment by Cheque must be made to the order of APL Co.Pte Ltd

| MKS. & NOS./CONTAINER NOS. | NO. OF PKGS. | H.M | DESCRIPTION OF PACKAGES AND GOODS | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|---|
| FCL/FCL | 3520 | | FREIGHT COLLECT | | 40.000M3 |
| APRU 507520-4 | | | BOXS  PE)LV05400.03.02  SLAC CY/CY 16840.000KG | | |
| SEAL: G41632 | | | 1X40'RF CONTAINER | | |
| | | | 16 PALLETS WITH 2816 BOXES — | | |
| | | | SUGAR DADDY | | |
| | | | 04 PALLETS WITH 704 BOXES— SNOW | | |
| | | | PEAS | | |
| | | | | | |
| | | | TOTAL: 20 PALLETS WITH 3,520 | | |
| | | | BOXES | | |
| | | | | | |
| | | | TEMPERATURE : + 2 C | | |
| | | | VENTILATION : CLOSED | | |
| | | | HUMIDITY      : 95 % | | |
| | | | CONTROLLED ATMOSPHERE | | |
| | | | | | |
| | | | FREIGHT COLLECT | | |

CONTINUED ON FOLLOWING PAGE

| B/L TO BE RELEASED AT   LIMA, PE | | OCEAN FREIGHT PAYABLE AT   SAN PEDRO, CA | |
|---|---|---|---|
| FREIGHT RATES CHARGES, WEIGHTS AND/OR MEASUREMENTS (SUBJECT TO CORRECTION) | PREPAID U.S. $ | COLLECT U.S. $ | Local Currency |

The undersigned Carrier hereby acknowledges receipt of the said container or packages or other shipping units said to contain the Goods described above in apparent external good order and condition unless otherwise stated. The Shipper agrees, and the Consignee and every person purchasing this Instrument for value, if negotiable, or otherwise having an interest in the Goods is advised that the receipt, custody, carriage and delivery of the Goods are subject to all the terms and conditions set forth and by incorporated by reference on this side and the reverse hereof, whether written, stamped or printed.

A set of 0   originals of this bill of lading is hereby issued by the Carrier. Upon surrender to the Carrier of any one negotiable bill of lading, properly endorsed, all others shall stand void.

| IBB 032 | | TOTAL PREPAID | |
|---|---|---|---|
| Vessel | Voyage | TOTAL COLLECT | |

BL number: APLU 900032627

Date: NOV. 01, 2006
Place Issued: LIMA, PE

American President Lines, Ltd., The Carrier
BILL OF LADING COMPLETE

THANK YOU FOR SHIPPING AMERICAN PRESIDENT LINES, LTD.

** Proof Read Copy **

# EXHIBIT C

**APL**    BILL OF LADING

COPY N      COLLECT

FREIGHT COLLECT

PARTICULARS FURNISHED BY SHIPPER

*(remainder of document illegible due to faded scan)*

annel 5                     Page: 002                    AM  TO: 18055490467 @ 18055490467                          Ch

AMENDED 0211 06

**APL**

**NOTICE OF ARRIVAL AND FREIGHT CHARGES**

| SHIPPER (Principal or Seller) |
| ANDEAN PRODUCE S.A.C. |
| CALLE AYACUCHO # 335, MIRAFLORES |
| RUC 20509896314 |

| BILL OF LADING NO | APLU 900032664 Y/Y SLAC | ESTIMATED TIME OF ARRIVAL at Dest | 11/14/06 |

CONSIGNEE (C) (Non-Negotiable unless consigned to order)
MARTINEZ FRUIT & VEGETABLE
11549 LOS OSOS VALLEY ROAD SAN LUIS
FAX  805 549 0467

CUSTOM ENTRY INFORMATION

GO DATE IS 15 DAYS FM VESSEL ARR FOR CAD
& 15 DAYS FM ARR INLAND FOR INBOND

NOTIFY PARTY (NP) / INTERMEDIATE CONSIGNEE
J & K FRESH LLC
9911 INGLEWOOD AVENUE, SUITE #200
CONTACTO: IRMA MEDINA

| ARRIVING VESSEL | APL TORQUOISE ,V072 | FLAG U.S.A SERVICE TYPE LOC |
| Vessel ETA | 11/14/06 | VIA LAST FOREIGN PORT MANZANILLO INT T |
| ORIGIN LOAD VESSEL | APL BALBOA ,V032 | PORT OF DISCHARGE CALLAO, PERU |
| DATE EXPORTED | 11/01/06 | FROM COUNTRY or ORIGIN PERU |
| PORT OF DISCHARGE | SAN PEDRO, CA US | DESTINATION SAN PEDRO, CA |

ALSO NOTIFY PARTY (ANP)

ARRIVING LOCATION

CALL APL CUSTOMER SERVICE AT (800) 999-7733
FOR ARRIVING LOCATION INFORMATION

| LEAD MARKS | CONTAINER NUMBER(S) |
| FCL/FCL | APRU5095387 G41914 |
| APRU 509538-7 | |
| SEAL: G41914 | |

| FOR CARGO AVAILABILITY | FOR CARGO AVAILABILITY AND SHIPMENT STATUS, CALL EAGLELINK AT (800) 2EAGLE1 FOR APL CUSTOMER SERVICE, CALL (800) 999-7733 |

DESCRIPTION OF GOODS (Refer to Original BL for full description)
1X40' RF CONTAINER
16 PALLETS WITH 2464 BOXES SUGAR
DADDY

SPECIAL INSTRUCTIONS

| | 3520PCES | 17110KG | 40.000M3 |

| FREIGHT RATE CHARGES, WEIGHTS AND/OR MEASUREMENTS (SUBJECT TO CORRECTION) | | PREPAID | COLLECT |
|---|---|---|---|
| | 1VA 4090.00/VAN | | 4090.00 |
| ATM | US$ 1700.00/EA | | 1700.00 |
| BAF | US$ 310.00/EA | | 310.00 |
| IFS | US$ 200.00/EA | | 200.00 |
| CSC | US$ 100.00/EA | | 100.00 |

CHECKS ARE PAYABLE TO APL 116 Inverness
Drive East, Suite 400, Englewood, CO 80112, Attn: Freight
Cashier
If you have questions, please contact Denver Customer
Center 1-800-999-7733. Voice Mail for Fax number changes:
(770) 395-8231

| VESSEL VOYAGE | 1B2 032  US$ | TOTALS→ | | 6400.00 |

On Store Door Delivery moves controlled by APL trucking, please notify your local APL office in writing of empty container availability (not the trucker) in order to stop per diem charges. Please contact APL Customer Service at 800-999-7733 for local email addresses.

**IMPORTANT DELIVERY INSTRUCTIONS**

Thank you for shipping with APL. This notice is given to APL importers and associates to expedite delivery. If original bills of lading were issued, we ask that you surrender one of the original bills, properly endorsed, to the following APL address closest to your geographical location. APL, LTD. 116 Inverness Dr. East Ste 400 Englewood, CO. 80112, APL, LTD. 100 Central Ave. Bldg 40C South Kearny, NJ 07032 or APL, LTD. 180 E. Ocean Blvd., Suite 800, Long Beach, CA 90802. To obtain the release of your goods, make payment of all outstanding freight and other charges due (demurrage, storage, fumigation, etc.). Please note cargo is subject to local Customs' jurisdiction and practice.

You are requested to arrange for the prompt delivery of your cargo. By doing so, you will avoid any unnecessary cargo and equipment detention costs. If incurred, these costs (DEMURRAGE/STORAGE CHARGES) will be assessed in accordance with the applicable tariff for any delays after expiration of free time. These charges must be paid before cargo can be released. Demurrage rates and free time assessment can be provided by calling an APL Customer Service Representative at 800-999-7733. Please also refer to Clause 15 on the reverse side of the original Bill of Lading regarding the disposition of any undelivered goods.

**CARRIER'S CERTIFICATE**

The undersigned carrier bringing the within described merchandise to this port, hereby certifies that this copy or extract of the Bill of Lading is genuine and may be used for the purpose of making Customs entry as provided for the Tariff Act of 1930.

John W. Allen
Director, Customer Service, North America
APL

overnite
Fedex V# 21474                                    #6400 —

# EXHIBIT D

**APL**                                    **BILL OF LADING**

| | |
|---|---|
| SHIPPER (Principal or Seller licensee and full address) | BOOKING NUMBER 900032677 |
| ANDEAN PRODUCE S.A.C.<br>CALLE AYACUCHO # 335, MIRAFLORES<br>TEL. 4459845 FAX 2412613<br>RUC 20509896314 | PAGE 1 OF 1<br>APLU 900032677 |
| | EXPORT REFERENCES<br>O/S 33353 |

| | |
|---|---|
| CONSIGNEE (Name and Full Address / Non Negotiable (Bukar Consigned to Order)<br>Unless provided otherwise a consignment "To Order" means "To Order of Shipper") | |
| MARTINEZ FRUIT & VEGETABLE<br>11549 LOS OSOS VALLEY ROAD<br>SAN LUIS CA 93401<br>TEL. 801-549-8008<br>FAX. 801-549-0467 | FORWARDING AGENT (References) FMC No.<br>HANSA COMERCIAL S.A. |
| NOTIFY PARTY (Name and Full Address) | POINT AND COUNTRY OF ORIGIN OF GOODS<br>CALLAO, PERU |
| J & K FRESH LLC<br>9911 INGLEWOOD AVENUE, SUITE #200<br>INGLEWOOD CA 90301-3600<br>PH: 310-419-8770 FAX: 310-419-8790<br>CONTACTO: IRMA MEDINA | ALSO NOTIFY (Name and Full Address) DOMESTIC ROUTING<br>EXPORT INSTRUCTIONS/PIER TERMINAL ONWARD ROUTING<br>FROM POINT OF DESTINATION |
| INITIAL CARRIAGE (MODE) | PLACE OF RECEIPT | |
| | CALLAO, PERU | COPY |
| EXPORT CARRIER (Vessel Voyage, & Flag) | PORT OF LOADING | COLLECT |
| APL BALBOA     032  USA CALLAO, PERU | | |
| PORT OF DISCHARGE | PLACE OF DELIVERY | |
| SAN PEDRO, CA | SAN PEDRO, CA | |

| MKS & NOS / CONTAINERS | NO OF PKGS | PARTICULARS FURNISHED BY SHIPPER<br>DESCRIPTION OF PACKAGES AND GOODS | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|
| FCL/FCL<br>APRU 505549-2<br>SEAL: 641913 | 3520 | FREIGHT COLLECT<br>BOXS PE:LV05400.03.02  SLAC CY/CY<br>1X40' RF CONTAINER<br>05 PALLETS WITH 880  BOXES - SNOW<br>PEAS<br>15 PALLETS WITH 2640 BOXES- SUGAR<br>DADDY<br>TOTAL: 20 PALLETS WITH 3520 BOXES<br><br>TEMPERATURE : + 2 C<br>VENTILATION : CLOSED<br>HUMIDITY    : 95 %<br>CONTROLLED ATMOSPHERE : 0<br><br>FREIGHT COLLECT | 17020.000KG<br>37522.632LB | 40.00CM<br>1412.588CF |

| ****CTR NBR** | ****SEAL NBR**** | T/S | MODE | QUANT/TYPE |
|---|---|---|---|---|
| APRU505549-2 | 641913 | R40 | CY/CY | 3520BOXS |

***** APL COPY *****
** NON-NEGOTIABLE **

| | OCEAN FREIGHT PAYABLE AT | | | |
|---|---|---|---|---|
| | PREPAID US $ | COLLECT US $ | Local Currency | |
| FREIGHT RATES CHARGES WEIGHTS AND/OR MEASUREMENTS SUBJECT TO CORRECTION | | | | AMERICAN PRESIDENT LINES, LTD. |

| PLACE OF | | | TOTAL PREPAID | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | TOTAL COLLECT | | | | | NOV. 01 2006 | |
| | | | | | | | | IRMA, PE | |
| FOC | 00421307<br>FORWARDER | 00632640<br>SHIPPER | 0000000<br>CONSIGNEE | LIA | SPO | SPO | Y<br>OSC | APLU 900032677<br>B/L NUMBER | |

**AMENDED 0211 06**

**APL**
NOTICE OF ARRIVAL AND FREIGHT CHARGES

| SHIPPER (Principal or Seller) |
| ANDEAN PRODUCE S.A.C. |
| CALLE AYACUCHO # 335, MIRAFLORES |
| RUC 20509896314 |

| BILL OF LADING NO. APLU 900032677 Y/Y SLAC | ESTIMATED DATE OF ARRIVAL/ETA DATE 11/14/06 |

CONSIGNEE (C) (Non-Negotiable unless consigned to order)
MARTINEZ FRUIT & VEGETABLE
11549 LOS OSOS VALLEY ROAD
FAX. 801-549-0467

**CUSTOM ENTRY INFORMATION**

GO DATE IS 15 DAYS FM VESSEL ARR FOR CAD
& 15 DAYS FM ARR INLAND FOR INBOND

NOTIFY PARTY (NP) / INTERMEDIATE CONSIGNEE
J & K FRESH LLC
9911 INGLEWOOD AVENUE, SUITE #200
CONTACTO: IRMA MEDINA

| ARRIVING VESSEL APL TURQUOISE ,V072 | FLAG U.S.A SERVICE TYPE LOC | ALSO NOTIFY PARTY (ANP) |
| Vessel ETA         11/14/06 | VIA LAST FOREIGN PORT MANZANILLO INT T |
| ORIGIN LOAD VESSEL APL BALBOA ,V032 | PORT OF ORIGIN CALLAO, PERU |
| DATE EXPORTED      11/01/06 | FROM country of ORIGIN PERU |
| PORT OF DISCHARGE SAN PEDRO, CA US | DESTINATION SAN PEDRO, CA |

| ARRIVING LOCATION | LEAD MARKS            CONTAINER NUMBER(S) |
| CALL APL CUSTOMER SERVICE AT (800) 999-7733 | FCL/FCL      APRU5055492 G41913 |
| FOR ARRIVING LOCATION INFORMATION | APRU 505549-2 |
|  | SEAL: G41913 |

| FOR CARGO AVAILABILITY | FOR CARGO AVAILABILITY AND SHIPMENT STATUS, |
|  | CALL EAGLELINK AT (800) 2EAGLE1 |
|  | FOR APL CUSTOMER SERVICE, CALL (800) 999-7733 |

DESCRIPTION OF GOODS (Refer to Original BL for full description)
1X40' RF CONTAINER
05 PALLETS WITH 880 BOXES - SNOW
PEAS

**SPECIAL INSTRUCTIONS**

| | | 3520PCES | 17020KG | 40.000M3 |

| FREIGHT BASIS CHARGES, WEIGHTS AND/OR MEASUREMENTS (SUBJECT TO CORRECTION) | | PREPAID | COLLECT |
| | 1VA 4090.00/VAN | | 4090.00 |
| ATM | US$ 1700.00/EA | | 1700.00 |
| BAF | US$  310.00/EA | | 310.00 |
| IFS | US$  200.00/EA | | 200.00 |
| CSC | US$  100.00/EA | | 100.00 |

CHECKS ARE PAYABLE TO APL 116 Inverness
Drive East, Suite 400, Englewood, CO 80112, Attn: Freight
Cashier
If you have questions, please contact Denver Customer
Center 1-800-999-7733. Voice Mail or Fax number changes:
(770) 995-8231

| VESSEL VOYAGE 1B2 032 US$ | TOTALS→ | 6400.00 |

On Store Door Delivery moves controlled by APL trucking, please notify your local APL office in writing of empty container availability (not
the trucker) in order to stop per diem charges. Please contact APL Customer Service at 800-999-7733 for local email addresses.

## IMPORTANT DELIVERY INSTRUCTIONS

Thank you for shipping with APL. This notice is given to APL importers and associates to expedite delivery. If original bills of lading were
issued, we ask that you surrender one of the original bills, properly endorsed, to the following APL address closest to your geographical
location. APL, LTD. 116 Inverness Dr. East Ste 400 Englewood, CO, 80112, APL, LTD. 100 Central Ave. Bldg 40C South Kearny, NJ 07032
or APL, LTD. 180 E. Ocean Blvd., Suite 800, Long Beach, CA 90802. To obtain the release of your goods, make payment of all outstanding
freight and other charges due (demurrage, storage, fumigation, etc.). Please note cargo is subject to local Customs' jurisdiction and
practice.

You are requested to arrange for the prompt delivery of your cargo. By doing so, you will avoid any unnecessary cargo and equipment
detention costs. If incurred, these costs (DEMURRAGE/STORAGE CHARGES) will be assessed in accordance with the applicable tariff
for any delays after expiration of free time. These charges must be paid before cargo can be released. Demurrage rates and free time
assessment can be provided by calling an APL Customer Service Representative at 800-999-7733. Please also refer to Clause 15 on
the reverse side of the original Bill of Lading regarding the disposition of any undelivered goods.

## CARRIER'S CERTIFICATE

The undersigned carrier bringing the within described merchandise to this port, hereby certifies that this copy or extract of the Bill of
Lading is genuine and may be used for the purpose of making Customs entry as provided for the Tariff Act of 1930.

John W. Allen
Director, Customer Service, North America
APL

over nite
FedEx      √ # 21474                    96400 -

# EXHIBIT E



every Tuesday? Please have someone let me know what is happening.

Thank you,
Tracey


[Image Removed]

---

**Check out the new AOL.** Most comprehensive set of free safety and security tools, free access to millions of high-quality videos from across the web, free AOL Mail and more.

1 Attached Images



900032678.jpg
Save to AOL Pictures Shoebox | Download

NOV-17-2006  16:24    J&K FRESH    1 310 419 8787    P.001/001

*Attn: Tracey - Just recv- We need doc's. Thanx Erma* 11/17/06 4:30 pm

## APL

### NOTICE OF ARRIVAL AND FREIGHT CHARGES

| BILL OF LADING No. | APLU 900032678 Y/T SLAC | ISSUE DATE | 11/24/06 |
|---|---|---|---|

**SHIPPER (Principle or Seller)**
ANDEAN PRODUCE S.A.C.
CALLE AYACUCHO # 335, MIRAFLORES
RUC 20509896314

**CUSTOM ENTRY INFORMATION**
THIS CARGO TO BE CLEARED AT SAN PEDRO/CA MOL
PRIOR TO MOVEMENT TO GUADALUPE, CA
GO DATE IS 15 DAYS FM VESSEL ARR FOR CAD
& 15 DAYS FM ARR INLAND FOR INBOND

**CONSIGNEE(S) (Non-Negotiable unless consigned to order)**
MARTINEZ FRUIT & VEGETABLE
11549 LOS OSOS VALLEY ROAD SAN LUIS
FAX  805 549 0467

**NOTIFY PARTY (NP)/ INTERMEDIATE CONSIGNEE**
J & K FRESH LLC
9911 INGLEWOOD AVENUE SUITE 200
TELF:310-419-8770/FAX:310-419-8790

| ARRIVING VESSEL | MOL INGENUITY ,V02I | FLAG U.S.A SERVICE TYPE PER |
|---|---|---|
| Vessel ETA | 11/21/06 | VIA LAST FOREIGN PORT MANZANILLO INT T |
| ORIGIN LOAD VESSEL | APL MENDOZA ,V034 | PORT OF ORIGIN CALLAO, PERU |
| DATE EXPORTED | 11/08/06 | FROM COUNTRY OF ORIGIN PERU |
| PORT OF DISCHARGE | SAN PEDRO/CA MOL US | DESTINATION GUADALUPE, CA |

**ALSO NOTIFY PARTY (ANP)**

**ARRIVING LOCATION**

**LEAD MARKS**  FCL/FCL    **CONTAINER NUMBER(S)** APRU5070521 G47607
APRU 507052-1
SEAL: G47607

**FDA CARGO AVAILABILITY**

**SPECIAL INSTRUCTIONS**

**DESCRIPTION OF GOODS (Refer to Original B.L. for full description)**
1X40'RF CONTAINER
16 PALLETS WITH 2816 BOXES-SUGAR
DADDY

| NO. OF PACKAGES | WEIGHT | MEASUREMENT |
|---|---|---|
| 5520PCES | 17110KG | 40.000M3 |

| FREIGHT RATE DETAILS, AMOUNTS AND/OR REQUIREMENTS PURSUANT TO CONNECTIONS | PREPAID | COLLECT |
|---|---|---|
| | IVA 4640.00/VAN | | 4640.00 |
| ATM | US$ 1700.00/EA | | 1700.00 |
| BAF | US$ 310.00/EA | | 310.00 |
| IFS | US$ 200.00/EA | | 200.00 |
| CBC | US$ 100.00/EA | | 100.00 |
| IMS | US$ 150.00/EA | | 150.00 |

CHECKS ARE PAYABLE TO APL 118 Inverness Drive East, Suite 400, Englewood, CO 80112, Attn: Freight Cashier
If you have questions, please contact Denver Customer Center 1-800-999-7733. Voice Mail or Fax number changes: (770) 395-8231

| VESSEL VOYAGE | IM4 034  US$ | TOTALS$ | 7100.00 |
|---|---|---|---|

On Store Door Delivery moves controlled by APL trucking, please notify your local APL office in writing of empty container availability (not the trucker) in order to stop per diem charges. Please contact APL Customer Service at 800-999-7733 for local email addresses.

## IMPORTANT DELIVERY INSTRUCTIONS

Thank you for shipping with APL. This notice is given to APL importers and associates to expedite delivery. If original bills of lading were issued, we ask that you surrender one of the original bills, properly endorsed, to the following APL address closest to your geographical location. APL, LTD. 118 Inverness Dr. East Ste 400 Englewood, CO. 80112, APL, LTD. 100 Central Ave. Bldg 40C South Kearny, NJ 07032 or APL. LTD. 140 West 6th Street, 1st Floor, San Pedro, CA. 90731. To obtain the release of your goods, make payment of all outstanding freight and other charges due (demurrage, storage, fumigation, etc.). Please note cargo is subject to local Customs' jurisdiction and practice.

You are requested to arrange for the prompt delivery of your cargo. By doing so, you will avoid any unnecessary cargo and equipment detention costs. If incurred, these costs (DEMURRAGE/STORAGE CHARGES) will be assessed in accordance with the applicable tariff for any delays after expiration of free time. These charges must be paid before cargo can be released. Demurrage rates and free time assessment can be provided by calling an APL Customer Service Representative at 800-999-7733. Please also refer to Clause 15 on the reverse side of the original Bill of Lading regarding the disposition of any undelivered goods.

## CARRIER'S CERTIFICATE

The undersigned carrier bringing the within described merchandise to this port, hereby certifies that this copy or extract of the Bill of Lading is genuine and may be used for the purpose of making Customs entry as provided for the Tariff Act of 1930.

John W. Allen
Director, Customer Service, North America
APL



NOV-17-2006  16:16



91%

P.001



TOTAL P.001

**APL**

## NOTICE OF ARRIVAL AND FREIGHT CHARGES

| SHIPPER (Principal or Seller) |
|---|
| ANDEAN PRODUCE S.A.C. |
| CALLE AYACUCHO # 335, MIRAFLORES |
| RUC 20509896314 |

| BILL OF LADING NO. APLU 900032678 Y/Y SLAC | ESTIMATED TIME OF ARRIVAL at Dest | 11/24/06 |
|---|---|---|

**CONSIGNEE (C) (Non-Negotiable unless consigned to order)**
MARTINEZ FRUIT & VEGETABLE
11549 LOS OSOS VALLEY ROAD SAN LUIS
FAX 805 549 0467

**CUSTOM ENTRY INFORMATION**
THIS CARGO TO BE CLEARED AT SAN PEDRO/CA MOL
PRIOR TO MOVEMENT TO GUADALUPE, CA
GO DATE IS 15 DAYS FM VESSEL ARR FOR CAD
& 15 DAYS FM ARR INLAND FOR INBOND

**NOTIFY PARTY (NP) / INTERMEDIATE CONSIGNEE**
J & K FRESH LLC
9911 INGLEWOOD AVENUE SUITE 200
TELF:310-419-8770/FAX:310-419-8790

**ARRIVING VESSEL** MOL INGENUITY ,V02II
**Vessel ETA** 11/21/06
**ORIGIN LOAD VESSEL** APL MENDOZA ,V034
**DATE EXPORTED** 11/08/06
**PORT OF DISCHARGE** SAN PEDRO/CA MOL US

**FLAG** U.S.A. **SERVICE TYPE** MTR
**VIA LAST FOREIGN PORT** MANZANILLO INT'T
**PORT OF ORIGIN** CALLAO, PERU
**FROM COUNTRY OF ORIGIN** PERU
**DESTINATION** GUADALUPE, CA

**ALSO NOTIFY PARTY (ANP)**

**ARRIVING LOCATION**

**FOR CARGO AVAILABILITY**

| LEAD MARKS | CONTAINER NUMBER(S) |
|---|---|
| FCL/FCL | APRU5070521 G47607 |
| APRU 507052-1 | |
| SEAL: G47607 | |

**SPECIAL INSTRUCTIONS**

**DESCRIPTION OF GOODS** (Refer to Original B.L for full description)
1X40 RF CONTAINER
16 PALLETS WITH 2816 BOXES-SUGAR
DADDY

| NO. OF PACKAGES | WEIGHT | MEASUREMENT |
|---|---|---|
| 3520PCES | 17110KG | 40.000M3 |

| FREIGHT RATE CHARGES, WEIGHTS AND/OR MEASUREMENTS (SUBJECT TO CORRECTION) | | PREPAID | COLLECT |
|---|---|---|---|
| | 1VA 4640.00/VAN | | 4640.00 |
| ATM | US$ 1700.00/EA | | 1700.00 |
| BAF | US$ 310.00/EA | | 310.00 |
| IFS | US$ 200.00/EA | | 200.00 |
| CSC | US$ 100.00/EA | | 100.00 |
| IMS | US$ 150.00/EA | | 150.00 |

CHECKS ARE PAYABLE TO APL 116 Inverness
Drive East, Suite 400, Englewood, CO 80112, Attn: Freight
Cashier
If you have questions, please contact Denver Customer
Center 1-800-999-7733, Voice Mail or Fax number changes:
(770) 395-8231

| VESSEL VOYAGE | 1M4 034 | US$ | TOTALS→ | | 7100.00 |
|---|---|---|---|---|---|

On Store Door Delivery moves controlled by APL trucking, please notify your local APL office in writing of empty container availability (not the trucker) in order to stop per diem charges. Please contact APL Customer Service at 800-999-7733 for local email addresses.

## IMPORTANT DELIVERY INSTRUCTIONS

Thank you for shipping with APL. This notice is given to APL importers and associates to expedite delivery. If original bills of lading were issued, we ask that you surrender one of the original bills, properly endorsed, to the following APL address closest to your geographical location. APL, LTD. 116 Inverness Dr. East Ste 400 Englewood, CO. 80112, APL, LTD. 100 Central Ave. Bldg 40C South Kearny, NJ 07082 or APL, LTD. 140 West 6th Street, 1st Floor, San Pedro, CA. 90731. To obtain the release of your goods, make payment of all outstanding freight and other charges due (demurrage, storage, fumigation, etc.). Please note cargo is subject to local Customs' jurisdiction and practice.

You are requested to arrange for the prompt delivery of your cargo. By doing so, you will avoid any unnecessary cargo and equipment detention costs. If incurred, these costs (DEMURRAGE/STORAGE CHARGES) will be assessed in accordance with the applicable tariff for any delays after expiration of free time. These charges must be paid before cargo can be released. Demurrage rates and free time assessment can be provided by calling an APL Customer Service Representative at 800-999-7733. Please also refer to Clause 16 on the reverse side of the original Bill of Lading regarding the disposition of any undelivered goods.

## CARRIER'S CERTIFICATE

The undersigned carrier bringing the within described merchandise to this port, hereby certifies that this copy or extract of the Bill of Lading is genuine and may be used for the purpose of making Customs entry as provided for the Tariff Act of 1930.

John W. Allen
Director, Customer Service, North America
APL

√ 100027

# EXHIBIT F

16/2006  11:36   3435954

OBISPO ST COOLING                                    PAGE  08

*Yamko*
YAMKO TRUCK LINES
8925 Cherry Ave., Long Beach, CA 90805-1720 562/259-1229

I.C.C. M.C. 121221

FREIGHT BILL No.  00146922
DATE  11-15-06

| | |
|---|---|
| CONSIGNEE | MARTINES XOSISPO STREET COOLER<br>151 OBISPO ST.<br>GUADALUPE, CA 93434 |
| SHIPPER | MARTINEZ FRUITS & VEGETABLES<br>APL/BERTH 302<br>TERMINAL ISLAND, CA<br><br>COLLECT |

| BROKER | AGENT | CHARGE | | |
|---|---|---|---|---|
| JK1067721 | APL TURQOISE | VESSEL | B/L NUMBER<br>2677 | |

| NO. PKGS. | DESCRIPTION & MARKS | WEIGHT | RATE | CHARGES |
|---|---|---|---|---|
| 1 | CONT:   3520 PCS: S. SNAPS&SNOW PEAS<br>CRLU 8200156<br><br>704 - Snos -   *Inta Sun*<br>2816 - Snaps<br>Line Out - 1:04 PM<br>Load #3 | 37523<br><br>2816<br>704 | Snaps<br>Sno | 16 X 176<br>4 X 176 |

BILL TO:
MARTINES FRUIT & VEGETABLE
P.O. BOX 3308
SAN LUIS OBISPO, CA 93403

DELIVERED BY  Hargette    DATE  11/16/6    RECEIVED BY CONSIGNEE  X  ___ Camp

DELIVERY RECEIPT

YAMKO TRUCK LINES
6925 Cherry Ave., Long Beach, CA 90805-1720 562/259-1229

FREIGHT BILL  No.    00145922
DATE    11-28-06

CONSIGNEE
MARTINES XOSISPO STREET COOLER
151 OBISPO ST.
GUADALUPE, CA 93434

SHIPPER
MARTINEZ FRUITS & VEGETABLES
APL/BERTH 302
TERMINAL ISLAND, CA

COLLECT

BROKER
JK1067721

AGENT
APL TURQOISE

CHARGE
VESSEL

B/L NUMBER
2677

| NO.PKGS. | DESCRIPTION & MARKS | WEIGHT | RATE | CHARGES |
|---|---|---|---|---|
| 1 | CONT: 3520 PCS: S. SNAPS&SNOW PEAS CRLU 8200156 | 37523 | 800.00 | 800.00 |
| | PLUG IN | | | 50.00 |
| | 18% FUEL SURCHARGE | | | 144.00 |
| | T O T A L | | | 994.00 |

DELIVERED BY                    DATE        RECEIVED BY CONSIGNEE
                                    /    /    X

BILL TO:
MARTINES FRUIT & VEGETABLE
P.O. BOX 3308
SAN LUIS OBISPO, CA 93403

ORIGINAL

TRUCK FROM LA. to Obispo

# EXHIBIT G

OBISPO ST COOLING    PAGE 05

# Yamko

**YAMKO TRUCK LINES**
6925 Cherry Ave., Long Beach, CA 90805-1720 562/259-1229

I.C.C. M.C. 121221

FREIGHT BILL No. 00145924
DATE 11-15-06

CONSIGNEE
MARTINEZ OBISPO STREET COOLER
151 OBISPO ST.
GUADALUPE, CA 93434

SHIPPER
MARTINEZ FRUITS & VEGETABLES
APL/BERTH 302
TERMINAL ISLAND, CA

COLLECT

| BROKER | APL AGENT | CHARGE VESSEL | | B/L NUMBER |
|---|---|---|---|---|

| NO. PKGS. | DESCRIPTION & MARKS | WEIGHT | RATE | CHARGES |
|---|---|---|---|---|
| 1 | CONTNR. 3520 PCS. S. SNAP&SNOW PEAS APRU 5055492 | 37523 | | |
| c/o Snap 30 Snow | Seal # G41913 0155529 APL 00031865 | | 2640 Snaps 266.80 880 Sno 266.79 | 15 x 176 5 x 176 |

Inka Sun Out 12:10 PM

Time In 11:00   Load #2

MARTINEZ FRUIT & VEGETABLE
P.O. BOX 3308
SAN LUIS OBISPO, CA 93403

DELIVERED BY _____ DATE 11/16/06 RECEIVED BY CONSIGNEE X _____

Driver to break seals.

**DELIVERY RECEIPT**

**YAMKO TRUCK LINES**
6925 Cherry Ave., Long Beac    ., 90805-1720 562/269-1229

FREIGHT BILL No.    00145924
DATE    11-28-06

CONSIGNEE
MARTINES XOSISPO STREET COOLER
151 OBISPO ST.
GUADALUPE, CA 93434

SHIPPER
MARTINEZ FRUITS & VEGETABLES
APL/BERTH 302
TERMINAL ISLAND, CA

BROKER
JK1067718

AGENT
APL TUROOISE

CHARGE
VESSEL
COLLECT

B/L NUMBER
2677

| NO. PKGS. | DESCRIPTION & MARKS | WEIGHT | RATE | CHARGES |
|---|---|---|---|---|
| 1 | CONT:    3520 PCS: S. SNAPS&SNOW PEAS APRU 5055492 | 37523 | 800.00 | 800.00 |
|  | AFTER HOURS PICK UP |  |  | 65.00 |
|  | PLUG IN |  |  | 50.00 |
|  | 18% FUEL SURCHARGE |  |  | 144.00 |
|  | TOTAL |  |  | 1059.00 |

| DELIVERED BY | DATE | RECEIVED BY CONSIGNEE |
|---|---|---|
|  | / / | X |

BILL TO:
MARTINES FRUIT & VEGETABLE
P.O. BOX 3308
SAN LUIS OBISPO, CA 93403

ORIGINAL

# EXHIBIT H

**YAMKO TRUCK LINES**

6925 Cherry Ave., Long Beach, ... 0805-1720 562/259-1229

FREIGHT BILL No.

DATE

CONSIGNEE: MARTINEZ LUISPO STREET COOLER
150 OBISPO ST.
GUADALUPE, CA 93434

SHIPPER: MARTINEZ FRUITS & VEGETABLE
APL/BERTH 302
TERMINAL ISLAND, CA

COLLECT

| BROKER | AGENT | CHARGE VESSEL | | |
|--------|-------|---------------|---|---|
| | APL TURQOISE | | B/L NUMBER 262? | |

| NO. PKGS. | DESCRIPTION & MARKS | WEIGHT | RATE | CHARGES |
|-----------|---------------------|--------|------|---------|
| 1 | FRUIT  35.?? PCS; 5 SNAPS&SNOW PEAS | 37126 | 800.00 | 229.07 |
| | ?P?U SU73204 | EXAM CHARGE TO FCL | | 130.?? |
| | | PLUG IN | | ??.?? |
| | EXAM/FCL TRACK#3957 | 10% FUEL SURCHARGE | | 144.00 |
| | | TOTAL | | 1004.00 |

BILL TO:
MARTINEZ FRUIT & VEGETABLE
P.O. BOX 13??
SAN LUIS OBISPO, CA 93403

| DELIVERED BY | DATE | RECEIVED BY CONSIGNEE |
|--------------|------|------------------------|
| | / / | X |

ORIGINAL

OBISPO ST COOLING

.C.C. M.C. 121227                    PAGE   01

**YAMKO TRUCK LINES**
6925 Cherry Ave., Long Beach, CA 90805-1720 562/259-1229

FREIGHT BILL  No.    00145934
DATE         11-15-06

| CONSIGNEE | | SHIPPER | |
|---|---|---|---|
| MARTINES XOSISPO STREET COOLER<br>151 OBISPO ST.<br>GUADALUPE, CA 93434 | | MARTINEZ FRUITS & VEGETABLES<br>APL/BERTH 302<br>TERMINAL ISLAND, CA<br><br>COLLECT | |

| BROKER | AGENT | CHARGE | |
|---|---|---|---|
| JK1067719 | APL TURQOISE | VESSEL | B/L NUMBER 2627 |

| NO. PKGS. | DESCRIPTION & MARKS | WEIGHT | RATE | CHARGES |
|---|---|---|---|---|
| 1 | CONT:    3580 PCS: S SNAPS&SNOW PEAS<br>APRU 5075204<br><br>EXAM:FCL | 37186<br><br>704<br>2464<br>2816 | SNO<br>SNAP | 44176 INKA SUN<br>INKA SUN<br>14 x 176 |

(handwritten) TEMPS 46°
41° TO 43°
AVG
B.C. St.
OBISPO Cooling

BILL TO:
MARTINES FRUIT & VEGETABLE
P.O. BOX 3308
SAN LUIS OBISPO, CA 93403

DELIVERED BY _____  DATE ____  RECEIVED BY CONSIGNEE   X _____

DELIVERY RECEIPT

# EXHIBIT I

**YAMKO TRUCK LINES**
6925 Cherry Ave., Long Beach, CA 90805-1720 562/259-1229

FREIGHT BILL No. 00145923
DATE 11-28-06

CONSIGNEE
MARTINES %OSISPO STREET COOLER
151 OBISPO ST.
GUADALUPE, CA 93434

SHIPPER
MARTINEZ FRUITS & VEGETABLES
APL/BERTH 302
TERMINAL ISLAND, CA

COLLECT

| BROKER | AGENT | CHARGE VESSEL | | B/L NUMBER |
|---|---|---|---|---|
| JK1067720 | APL TURQOISE | | | 2677 |

| NO. PKGS. | DESCRIPTION & MARKS | WEIGHT | RATE | CHARGES |
|---|---|---|---|---|
| 1 | CONT: 3520 PCS: S. SNAPS&SNOW PEAS | 37523 | 800.00 | 800.00 |
| | APRU 5095387 | AFTER HOURS | PICK UP | 65.00 |
| | | PLUG IN | | 50.00 |
| | | 18% FUEL SURCHARGE | | 144.00 |
| | | | T O T A L | 1059.00 |

| DELIVERED BY | DATE / / | RECEIVED BY CONSIGNEE X |
|---|---|---|

BILL TO:
MARTINES FRUIT & VEGETABLE
P.O. BOX 3308
SAN LUIS OBISPO, CA 93403

ORIGINAL

OBISPO ST COOLING                                    PAGE  01
I.C.C. M.C. 121221

# YAMKO TRUCK LINES
6925 Cherry Ave., Long Beach, CA 90805-1720 562/259-1229

**FREIGHT BILL  No.**    00145923
**DATE**    11-15-06

| CONSIGNEE | SHIPPER |
|---|---|
| MARTINES %OSISPO STREET COOLER<br>151 OBISPO ST.<br>GUADALUPE, CA 93434 | MARTINEZ FRUITS & VEGETABLES<br>APL/BERTH 302<br>TERMINAL ISLAND, CA |

CHARGE  COLLECT
VESSEL

| BROKER | AGENT | CHARGE VESSEL | | B/L NUMBER |
|---|---|---|---|---|
| JK1067720 | APL TURQUOISE | | | 2677 |

| NO. PKGS. | DESCRIPTION & MARKS | WEIGHT | RATE | CHARGES |
|---|---|---|---|---|
| 1 | CONT:    3520 PCS: S. SNAPS&SNOW PEAS<br>APRU 5095387 | 37523 | | |

Inka San

02676-1056 - Sros  6 × 176 -    8 pts - Inka San
                                              2667
2464 - Snaps 14 × 176 <    6 pt - APL Pirua
                                              26670

Load #1

BILL TO:
MARTINES FRUIT & VEGETABLE
P.O. BOX 3308
SAN LUIS OBISPO, CA 93403

DELIVERED BY    DATE    RECEIVED BY CONSIGNEE
X

DELIVERY RECEIPT

# EXHIBIT J

**YAMKO TRUCK LINES**
6925 Cherry Ave., Long Beach, CA 90805-1720 562/259-1229

| FREIGHT BILL No. | 00146002 |
|---|---|
| DATE | 12-04-06 |

**CONSIGNEE**
MARTINES ZOSISPO STREET COOLER
151 OBISPO ST.
GUADALUPE, CA 93434

**SHIPPER**
MARTINEZ FRUITS & VEGETABLES
APL/BERTH 136
WILMINGTON, CA

COLLECT

| BROKER | AGENT | CHARGE |
|---|---|---|
| JR1067J14 | MOL INGENUITY | VESSEL |

B/L NUMBER: 2678

| NO. PKGS. | DESCRIPTION & MARKS | WEIGHT | RATE | CHARGES |
|---|---|---|---|---|
| 1 | CONT# 3520 PCS: S. SNAPS&SNOW PEAS | 37721 | 800.00 | 800.00 |
| | APL 9079521 | 18% FUEL SURCHARGE | | 144.00 |
| | | TOTAL | | 944.00 |

| DELIVERED BY | DATE | RECEIVED BY CONSIGNEE |
|---|---|---|
| | / / | X |

BILL TO:
MARTINES FRUIT & VEGETABLE
P.O. BOX 3308
SAN LUIS OBISPO, CA 93403

ORIGINAL

DELIVERY RECEIPT

/2006  11:03    3435954          OBISPO ST COOLING                    PAGE  01

I.C.C. M.C. 121221

**YAMKO TRUCK LINES**
6925 Cherry Ave., Long Beach, CA 90805-1720 562/259-1229

FREIGHT BILL No.    0014600
DATE               11-22-06

CONSIGNEE
MARTINES XOSISPO STREET COOLER
151 OBISPO ST.
GUADALURE, CA 93434

SHIPPER
MARTINEZ FRUITS & VEGETABLES
APL/BERTH 136
WILMINGTON, CA

COLLECT

| BROKER | AGENT | CHARGE VESSEL | | B/L NUMBER |
|---|---|---|---|---|
| JK1067314 | MOL INGENUITY | | | 2670 |

| NO. PKGS. | DESCRIPTION & MARKS | WEIGHT | RATE | CHARGES |
|---|---|---|---|---|
| 1 | CONT:   3920 PCS: S. SNAPS&SNOW PEAS   APRU 5070521 | 37721 | | |

1:00 pm
11-24-06

TEMPS: 40°
38° TO 39°
AVG BC°

$4 \times 176 = 704$
$16 \times 176 = 2816$

BILL TO:
MARTINES FRUIT & VEGETABLE
P.O. BOX 3308
SAN LUIS OBISPO, CA 93403

DELIVERED BY:                DATE          RECEIVED BY CONSIGNEE
                            7/29/06        X

CONSIGNEE PLEASE NOTE: 1. Related or Towed container (while at delivery address) will be at Consignee's Expense. 2. To avoid additional charges, container must be clean and clear of trash at time of pick up. 3. Detention Charges begin after 3rd day (including the pick up day from the harbor). Container must be empty and Yamko notified 24 hours prior to pick up for consignee to be relieved of any detention charges. Consignee takes sole responsibility for equipment

# EXHIBIT K

Case 1:07-cv-07082-SAS    Document 1    Filed 08/09/2007    Page 54 of 62
APL: Bill of Lading Terms and Conditions
Page 1 of 9



Print    Close

# Bill of Lading Terms and Conditions

### 1. DEFINITIONS

i. "Carrier"includes APL Co. Pte Ltd, American President Lines, Ltd, the Vessel, its owner, operator, charterer ( whether demise, time, voyage, space or slot), the master, and any connecting or substitute water carrier.

ii. "Merchant" includes the Shipper, Consignee, Receiver, Holder of the Bill of Lading, Owner of the cargo or Person entitled to the possession of the cargo or having a present or future interest in the Goods and the servants and agents of any of these, all of whom shall be jointly and severally liable to the Carrier for the payment of all Freight, and for the performance of the obligations of any of them under this Bill of Lading.

iii. "Person" means any natural person, company, firm, body corporate of unincorporated association or body, including any Government or governmental or statutory instrumentality or port authority.

iv. "Sub-Contractor" includes owners and operators of vessels (other than the Carrier), stevedores, terminal and groupage operators, road and rail transport operators, longshoremen, warehousemen and any independent contractor employed by the Carrier in performance of the Carriage.

v. "Indemnify" includes defend, indemnify and hold harmless.

vi. "Goods" means the cargo received from the Merchant and includes any equipment or Container not supplied by or on behalf of the Carrier.

vii. An endorsement on this Bill of Lading that the Goods have been shipped "on board" means on board the Carrier's Vessel, or another mode of transport operated by or on behalf of Carrier en route to the Port of Loading for loading aboard Carrier's Vessel.

viii. "Container" includes any open or closed container, van, trailer, flatbed, transportable tank, flat, pallet, skid, platform or any similar article used to consolidate Goods and any equipment associated or attached thereto.

ix. "Carriage" means the whole or any part of the operations and services undertaken by the Carrier in respect of the Goods covered by this Bill of Lading.

x. "Combined Transport" arises if the Place of Receipt and/or the Place of Delivery are indicated on the face hereof in the relevant spaces.

xi. "Port to Port Shipment" arises if the Carriage called for by this Bill of Lading is not Combined Transport.

xii. "Vessel" includes the vessel named on the face of this Bill of Lading and any other vessel, lighter or watercraft owned, operated, chartered or employed by the Carrier or any connecting or substituted water carrier performing Carriage under this Bill of Lading.

xiii. "Freight" includes all charges payable to the Carrier in accordance with the Applicable Tariff and this Bill of Lading.

### 2. CARRIER'S APPLICABLE TARIFF

The terms of the Carrier's Applicable Tariff are incorporated herein. Particular attention is drawn to the terms therein relating to Container and Vehicle demurrage. Copies of the relevant provisions of the Applicable Tariff are obtainable from the Carrier or its agents upon request. In case of inconsistency between this Bill of Lading and the Applicable Tariff, this Bill of Lading shall prevail.

### 3 .WARRANTY

The Merchant warrants that in agreeing to the Terms and Conditions hereof, including the Applicable Tariff(s), it is, or has the authority of, the Person owning or entitled to the possession of the Goods and/or Container and this Bill of Lading, and that all prior agreements and Freight arrangements are merged in and superseded by the provisions of this Bill of Lading.

### 4. SUB CONTRACTING

i. The Carrier shall be entitled to sub-contract on any terms the whole or any part of the Carriage, loading, unloading, storing, warehousing, handling and any and all duties whatsoever undertaken by the Carrier in relation to the Goods.

ii. The Merchant undertakes that no claim or allegation shall be made against any Person whomsoever by whom the Carriage is procured, performed or undertaken, whether directly or indirectly (including any independent contractors and any Sub-Contractors of the Carrier and their servants or agents), other than the Carrier which imposes or attempts to impose upon any such Person, or any Vessel owned by any such Person, any liability whatsoever in connection with the Goods or the Carriage of the Goods, whether or not

arising out of negligence on the part of such Person and, if any such claim or allegation should nevertheless be made, to indemnify the Carrier against all consequences thereof. Without prejudice to the foregoing every such Person shall have the benefit of every right, defence, limitation and liberty of whatsoever nature herein contained or otherwise available to the Carrier as if such provisions were expressly for its benefit; and in entering into this contract, the Carrier, to the extent of these provisions, does so not only on its own behalf but also as agent and trustee for such Persons.

iii.    The Merchant further undertakes that no claim or allegation in respect of the Goods shall be made against the Carrier by any Person other than in accordance with the terms and conditions of this Bill of Lading which imposes or attempts to impose upon the Carrier any liability whatsoever in connection with the Goods or the Carriage of the Goods, whether or not arising out of negligence on the part of the Carrier and, if any such claim or allegation should nevertheless be made, to indemnify the Carrier against all consequences thereof.

## 5. CARRIER´S RESPONSIBILITY

A.    PORT-TO-PORT SHIPMENT
If the Carriage called for by this Bill of Lading is a Port-to-Port Shipment, the Carrier's liability, if any, shall be restricted to the period when the Goods are loaded on board the Vessel until discharged therefrom or transhipped to another Vessel tackle-to-tackle, to be determined in accordance with the provisions of Clause 6 hereof.

B.    COMBINED TRANSPORT
i.    If the Carriage called for by this Bill of Lading is a Combined Transport Shipment, the Carrier undertakes to perform and/or procure in its own name, performance of the Carriage from the Place of Receipt or the Port of Loading to the Port of Discharge or the Place of Delivery, whichever is applicable, and the Carrier's liability, if any, shall be determined in accordance with the provisions of Clause 6 hereof.

ii.    During the period prior to loading onto the Vessel and after discharge from the Vessel, the Carrier shall be entitled as against the Merchant to all rights, defences, immunities, exemptions, limitations of or exonerations from liability, liberties and benefits contained or incorporated in the contract between the Carrier and any Person whomsoever by whom the Carriage is procured, performed or undertaken, whether directly or indirectly (and including such Persons mentioned in Clause 4 ii) hereof) and who would have been liable to the Merchant if the Merchant had contracted directly with such Person or contained in any compulsory legislation applicable to such Person. However, in no event shall the Carrier's liability exceed that determined in accordance with the provisions of Clause 6 hereof.

iii.    If it cannot be proven where or when or at what stage of the Carriage the Goods or Containers or other packages were lost or damaged, it shall be conclusively deemed to have occurred whilst at sea and the Carrier's liability, if any, shall be determined in accordance with the provisions of Clause 6 hereof.

C.    GENERAL PROVISIONS (APPLICABLE TO BOTH PORT-TO-PORT AND COMBINED TRANSPORT SHIPMENTS)
i.    The Carrier does not undertake that the Goods or Containers or other packages shall arrive at the Port of Discharge or Place of Delivery at any particular time or to meet any particular market or use, and the Carrier shall in no circumstances be liable for any direct, indirect or consequential loss or damage caused by delay or any other cause.

ii.    The terms of this Bill of Lading shall govern all responsibilities of the Carrier in connection with or arising out of the supply of a Container to the Merchant whether before or after the Goods are received by the Carrier for transportation or delivered to the Merchant.

iii.    When a Container is supplied by the Merchant, the Merchant enters into this Bill of Lading contract for itself and as agent of the owner or lessee (if other than the Merchant) of the Container, and the owner or lessee, as the case may be, is bound by the Terms and Conditions of this Bill of Lading as a result.

iv.    The rights, defences, immunities, exemptions, limitations of and exonerations from liability, liberties and benefits shall apply in any action or proceeding whatsoever brought against the Carrier and/or any Person encompassed in Clause 4 ii) hereof, whether in contract, tort, equity or other theory of recovery.

## 6. PARAMOUNT CLAUSE

i.    From loading of the Goods onto the Vessel until discharge of the Goods from the Vessel, the Carrier's responsibility shall be subject to the provisions of any legislation compulsorily applicable to this Bill of Lading:
a.    which gives effect to the Hague Rules contained in the International Convention for the Unification of Certain Rules Relating to Bills of Lading, dated at Brussels, August 25, 1924, ("the Hague Rules") including adaptations thereof, such as the Carriage of Goods by Sea Act of the United States, 1936 ( "US COGSA" ), the provisions of which shall apply on all shipments to or from the United States

whether compulsorily applicable or not, or

b. which gives effect to said Rules as amended by the Protocols to Amend the International Convention for the Unification of Certain Rules of Law Relating to Bills of Lading, dated at Brussels, February 23, 1968 ( the "Hague-Visby Rules" ) and December 21, 1979 ( the "SDR Protocol" ), but where the Hague-Visby Rules or SDR Protocol are not compulsorily applicable, they shall not be given effect. Where the Hague Rules, adaptations thereof or the Hague-Visby Rules and SDR Protocol are not compulsorily applicable, except as to shipments to or from the United States, as provided in Clause 6 i) a), this Bill of Lading shall be governed by the Hague Rules, except that the limitation shall be US$500 per package or per shipping unit as stated in Clause 7, and without prejudice to the Carrier's right to rely upon the Terms and Conditions of this Bill of Lading, notwithstanding the fact that they may confer wider or more beneficial rights, defences, immunities, exemptions, limitations, exonerations, liberties or benefits upon the Carrier and third-party beneficiaries than those afforded by the aforesaid conventions or legislation.

ii. The applicable conventions or legislation shall apply to the Carriage by inland waterways and reference to Carriage by sea in such conventions or legislation shall be deemed to include inland waterways.

iii. The Carrier, notwithstanding which convention or legislation is applicable, shall be entitled to the benefit of Sections 4281 through 4287 of the Revised Statutes of the United States and amendments thereto, as if the same were expressly set out herein, including but not limited to the Fire Statute.

iv. Prior to loading onto the Vessel and after discharge from the Vessel or if the stage of Carriage during which the loss or damage to Goods occurred cannot be proved, the Carrier's liability shall be governed under the Hague Rules, except that the limitation shall be US$500 per package or per shipping unit as stated in Clause 7, and for this purpose the Hague Rules shall be extended to the periods before loading and subsequent to discharge and to the entire period of the Carrier's responsibility.
Notwithstanding Clause 6 iv), if the provisions of any contract between Carrier and any contractor or the provisions of any international convention or national law applicable to any such mode of Carriage employed at the time of such loss, damage, misdelivery, conversion or delay would result in liability to the modal carrier, and such liability is less than Carrier's liability determined in Clause 6 iv), then Carrier's liability shall not exceed such lesser amount.

v. It is hereby agreed by the Merchant that the Carrier qualifies and shall be regarded as a Person entitled to limit liability under the relevant Convention on the Limitation of Liability for Maritime Claims or similar legislation; except to the extent that mandatory law of the country applies in the appropriate jurisdiction ( in which case such law shall apply ), the size of the fund to which the Carrier may limit liability shall be calculated by multiplying the limitation fund of the carrying Vessel at the relevant time by the number of Twenty Foot Equivalent Units ("TEUs") aboard at that time for which the Carrier is the contracting Carrier and dividing that total by the total number of TEUs aboard at that time. Nothing herein contained, expressed, implied or incorporated by reference, shall be deemed to waive or operate to deprive the Carrier of or lessen any of its rights, defences, immunities, limitations, exonerations, liberties or benefits afforded by applicable legislation or by the Terms and Conditions hereof.

## 7. PACKAGE LIMITATION

i. For shipments to and from the United States, neither the Carrier nor the Vessel shall in any event become liable for any loss of or damage to or in connection with the Carriage of Goods in an amount exceeding US$500 (which is the package or shipping unit limitation under U.S. COGSA) per package or in the case of Goods not shipped in packages per customary freight unit.

ii. In all other trades the Carrier's maximum liability shall be as provided in clause 7 save that the words "£100 lawful money of the United Kingdom" shall substitute the word "US$500" wherever appearing therein.

iii. Notwithstanding Clause 7 i) and ii), where the nature and value of Goods have been declared by the Shipper in writing to the Carrier before shipment and inserted in this Bill of Lading and the Shipper has paid additional Freight on such declared values, the Carriers liability if any, shall not exceed the declared value and any partial loss or damage shall be adjusted pro-rata on the basis of such declared value.

iv. Shipping unit in this Clause 7 includes customary freight unit and the term "unit" as used in the Hague Rules and Hague Visby Rules.
This clause applies in addition to and shall not be construed as derogating from any defence or exclusion, restriction or limitation of liability available to the Carrier under the terms of this Bill of Lading or otherwise.

## 8. NOTICE OF LOSS, TIME BAR

i. The Carrier shall be deemed prima facie to have delivered the Goods as described in the Bill of Lading unless notice of loss or damage to the Goods, indicating the general nature of such loss or damage, shall have been given in writing to the Carrier at the time of removal of the Goods into the custody of the Person entitled to delivery thereof under this Bill of Lading or, if the loss or damage is not apparent, within three consecutive days thereafter .

ii. The Carrier shall in any event be discharged from all liability whatsoever in respect of the Goods, unless suit

Case 1:07-cv-07082-SAS    Document 1    Filed 08/09/2007    Page 57 of 62
APL: Bill of Lading Terms and Conditions
Page 4 of 9

is brought in the proper forum and written notice thereof received by the Carrier within nine months after delivery of the Goods or the date when the Goods should have been delivered . In the event that such time period shall be found to be contrary to any law compulsorily applicable , the period prescribed by such law shall then apply but in that circumstance only.

### 9. Shipper-Packed Containers

i.  If a Container has not been filled, packed, stuffed or loaded by the Carrier, the Carrier shall not be liable for loss of or damage to the Goods and the Merchant shall indemnify the Carrier against any loss, damage, liability or expense incurred by the Carrier, if such loss, damage, liability or expense has been caused by:
   a.  the manner in which the Container has been filled, packed, stuffed or loaded; or
   b.  the unsuitability of the Goods for Carriage in Container; or
   c.  the unsuitability or defective condition of the Container arising without any want of due diligence on the part of the Carrier to make the Container reasonably fit for the purpose for which it is intended; or
   d.  the unsuitability or defective condition of the Container supplied by the Shipper.
ii.  The Shipper shall inspect Containers before stuffing them and its use of the Containers shall be prima facie evidence of their being suitable and not in a defective condition.

### 10. CARRIER´S CONTAINERS

i.  Each Merchant shall assume full responsibility and indemnify the Carrier for any loss of or damage howsoever caused to any Container or other equipment furnished by or on behalf of the Carrier which occurs while such Container or equipment is in the possession of any Merchant or any servant or agent of or contractor engaged by or on behalf of any Merchant.
ii.  The Carrier shall not in any event be liable for and each Merchant shall be severally liable to indemnify and hold the Carrier harmless from and against any loss of or damage to property of other Persons or injuries to other Persons caused by Container(s) furnished by or on behalf of the Carrier or contents thereof while in the use or possession of any Merchant or any servant or agent of or contractor engaged by or on behalf of any Merchant.

### 11. INSPECTION OF GOODS

i.  The Carrier shall be entitled, but under no obligation, to open any package or Container at any time and to inspect the contents.
ii.  If by order of the authorities at any place, a Container has to be opened for the Goods to be inspected, the Carrier will not be liable for any loss or damage incurred as a result of any opening, unpacking, inspection or repacking. The Carrier shall be entitled to recover the cost of such opening, unpacking, inspection and repacking from the Merchant.

### 12. DESCRIPTION OF GOODS

i.  No representation is made by the Carrier as to the weight, contents, measure, quantity, quality, description, condition, marks, numbers or value of the Goods, and the Carrier shall be under no responsibility whatsoever in respect of such description or particulars furnished or made by or on behalf of the Shipper.
ii.  If any particulars of any Letter of Credit and/or Import Licence and/or Sale Contract and/or Invoice or Order number and/or details or any contract to which the Carrier is not a party are shown on the face of this Bill of Lading, such particulars are included solely at the request of the Merchant for its convenience. The Merchant agrees that the inclusion of such particulars shall not be regarded as a declaration of value and in no way affects the Carrier's liability under this Bill of Lading. The Merchant further agrees to indemnify the Carrier against all consequences of including such particulars in this Bill of Lading.
iii.  The Merchant acknowledges that, except when the provisions of Clause 7 iii) apply, the value of the Goods is unknown to the Carrier.

### 13. SHIPPER'S/MERCHANT'S RESPONSIBILITY

i.  The Shipper warrants to the Carrier that the particulars relating to the Goods as set out overleaf have been checked by the Shipper on receipt of this Bill of Lading and that such particulars and any other particulars furnished by or on behalf of the Shipper are correct.
ii.  The Merchant shall indemnify the Carrier against all loss, damage, liability and expenses arising or resulting from inaccuracies in or inadequacy of such particulars.
iii.  The Merchant shall comply with all regulations or requirements of customs, port and other authorities, and

shall bear and pay all duties, taxes, fines, imposts, expenses or losses (including, without prejudice to the generality of the foregoing, the full return Freight for the Goods if returned, or if on-carried, the full Freight from the Port of Discharge or the Place of Delivery nominated herein to the amended Port of Discharge or the amended Place of Delivery) incurred or suffered by reason of any failure to so comply or by reason of any illegal, incorrect or insufficient marking, numbering or addressing of the Goods, and shall indemnify the Carrier in respect of any such failure to comply or by reason of any such marking, numbering or addressing of the Goods.

## 14. FREIGHT, INCLUDING CHARGES

i.   Freight including charges shall be deemed fully earned on receipt of the Goods by the Carrier and shall be paid and non-returnable in any event.
ii.  The Freight has been calculated on the basis of particulars furnished by or on behalf of the Shipper. The Carrier may at any time open any Container or other package or unit in order to reweigh, remeasure or revalue the contents and if the particulars furnished by or on behalf of the Shipper are incorrect, it is agreed that a sum equal to either five times the difference between the correct Freight and the Freight charged or to double the correct Freight less the Freight charged, whichever sum is the smaller, and the expenses incurred in determining the correct particulars, shall be payable as liquidated damages to the Carrier.
iii. Full Freight hereunder shall be due and payable at the place where this Bill of Lading is issued, by the Merchant without deduction on receipt of the Goods or part thereof by the Carrier for shipment. All charges due hereunder together with Freight (if not paid at the Port of Loading as aforesaid) shall be due from and payable on demand by the Merchant (who shall be jointly and severally liable to the Carrier therefore) at such port or place as the Carrier may require, Vessel or cargo lost or not lost from any cause whatsoever.
iv.  All other charges shall be paid to the Carrier before delivery of the Goods in full without offset, counterclaim or deduction, in the currency specified in the Carrier's Applicable Tariff, or, if no currency is so specified, in the lawful currency of the United States.
v.   The Merchant shall remain responsible for all Freight regardless whether the Bill of Lading be marked, in words or symbols, "Prepaid", "To be Prepaid" or "Collect".

## 15. Lien

The Carrier shall have a lien on all Goods, Containers and any documents relating thereto for all sums due under this contract or any other contract of undertaking to which the Merchant was party or otherwise involved, which lien shall also extend to general average contributions, salvage and the cost of recovering such sums, inclusive of attorney fees, and shall survive delivery. Such lien may be enforced by the Carrier by public auction or private treaty, without notice to the Merchant.

## 16. OPTIONAL STOWAGE AND DECK CARGO

i.   By tendering Goods for Carriage without any written request for Carriage in a specialized Container, or for Carriage otherwise than in a Container, the Merchant accepts that the Carriage may properly be undertaken in a general purpose Container or similar article of transport used to consolidate Goods.
ii.  Goods may be stowed by the Carrier in Containers, and Containers whether stowed by the Carrier or received fully stowed, may be carried on or under deck without notice unless on the face hereof it is specifically stipulated that the Containers or Goods will be carried under deck. The Merchant expressly agrees that cargo stowed in Containers and carried on deck is considered for all legal purposes to be cargo stowed under deck. Goods stowed in Containers on deck shall be subject to the legislation referred to in Clause 6 hereof and will contribute to General Average and receive compensation in General Average, as the case may be.
iii. Goods (not being Goods stowed in Containers other than flats, pallets, or similar units) which are stated herein to be carried on deck and which are so carried, are carried without responsibility on the part of the Carrier for loss or damage of whatsoever nature arising during Carriage by sea whether caused by unseaworthiness or negligence or any other cause whatsoever.

## 17. METHODS AND ROUTES OF TRANSPORTATION

i.   The Carrier may at any time and without notice to the Merchant:
   a.  use any means of transport or storage whatsoever;
   b.  transfer the Goods from one conveyance to another;
   c.  transship the Goods;
   d.  undertake the Carriage of the Goods on a Vessel or Vessels in addition to and/or other than that named on the face hereof;
   e.  unpack and remove Goods which have been packed into Container and forward the same in a

Case 1:07-cv-07082-SAS    Document 1    Filed 08/09/2007    Page 59 of 62
APL: Bill of Lading Terms and Conditions
Page 6 of 9

      Container or otherwise;

f.  proceed by any route in its discretion (whether or not the nearest or most direct or customary or advertised route), at any speed, and proceed to or stay at any place or port whatsoever once or more often and in any order;

g.  load or unload the Goods at any place or port (whether or not such port is named overleaf as the Port of Loading or Port of Discharge) and store the Goods at any such place or port;

h.  comply with any orders or recommendations given by any government or authority, or any Person or body acting or purporting to act as or on behalf of such government or authority, or having under the terms of the insurance on the conveyance employed by the Carrier the right to give orders or directions;

i.  permit the Vessel to proceed with or without pilots, to tow or be towed, or to be dry-docked;

ii.  The liberties set out in Clause 17 i) may be invoked by the Carrier for any purpose whatsoever, whether or not connected with the Carriage of the Goods, including loading or unloading other Goods, bunkering, undergoing repairs, adjusting instruments, picking up or landing Persons involved with the operation or maintenance of the Vessel in all situations. Anything done in accordance with Clause 17 i) or any delay arising therefrom shall be deemed to be within the contractual Carriage and shall not be a deviation.

## 18. MATTERS AFFECTING PERFORMANCE

i.  If at anytime the Carriage is or is likely to be affected by any hindrance, risk, delay, difficulty or disadvantage of any kind (including by the condition of the Goods) whensoever and howsoever arising whether or not prior to the commencement of the Carriage or the making of the contract of Carriage, the Carrier may without notice to the Merchant:

a.  abandon the Carriage of the Goods or any part of them and where reasonably possible place the Goods or any part of them at the Merchant's disposal at any place which the Carrier may deem safe and convenient, whereupon the responsibility of the Carrier in respect of such Goods shall cease; or

b.  suspend Carriage of the Goods or any part of them and store them ashore or afloat upon the terms of the Bill of Lading and use reasonable endeavours to forward the Goods as soon as possible after the cause of the hindrance, risk, delay, difficulty or disadvantage has been removed, but the Carrier makes no representations as to the maximum period between such removal and the forwarding of the Goods to the Port of Discharge or Place of Delivery, whichever is applicable, named in this Bill of Lading.

ii.  In any event the Carrier shall be entitled to full Freight on Goods received for Carriage and the Merchant shall pay any additional cost resulting from the circumstances mentioned in Clause 18 i) ;

iii.  If the Carrier elects to suspend the Carriage under Clause 18 i) b) , this shall not prejudice the Carrier's rights subsequently to abandon Carriage under Clause 18 i) a).

## 19. DANGEROUS, HAZARDOUS OR NOXIOUS GOODS

i.  No Goods which are or may become inflammable, explosive, corrosive, noxious, hazardous, dangerous or damaging

ii.  ( including radio-active materials ), or which are or may become liable to damage any property whatsoever, shall be tendered to the Carrier for Carriage without its express consent in writing and without the Container or other covering in which the Goods are to be carried as well as the Goods themselves being distinctly marked on the outside so as to indicate the nature and character of any such Goods and so as to comply with any applicable laws, regulations or requirements. If any such Goods are delivered to the Carrier without such written consent and marking, or if in the opinion of the Carrier the Goods are or are liable to become of a dangerous or noxious nature, the same may at any time be destroyed, disposed of, abandoned or rendered harmless without compensation to the Merchant and without prejudice to the Carrier's right to Freight and the Carrier shall be under no liability to make any general average contribution in respect of such Goods.

iii.  The Merchant undertakes that such Goods are packed in a manner adequate to withstand the risk of Carriage having regard to their nature and in compliance with all laws or regulations which may be applicable during Carriage and handling.

iv.  Whether or not the Merchant was aware of the nature of the Goods, the Merchant shall indemnify the Carrier against all claims, losses, damages, liabilities or expenses arising in consequence of the Carriage of such Goods. Nothing contained in this Clause shall deprive the Carrier of any of its rights provided for elsewhere in this Bill of Lading.

## 20. TEMPERATURE CONTROLLED CARGO

i.  Goods will not be provided temperature controlled, insulated or naturally ventilated stowage unless the Carrier has undertaken such special stowage in advance of the Carrier's receipt of the Goods, and in the absence of such agreement, the Merchant warrants that the Goods do not require such protection. The

Case 1:07-cv-07082-SAS    Document 1    Filed 08/09/2007    Page 60 of 62
APL: Bill of Lading Terms and Conditions
Page 7 of 9

Carrier does not provide mechanically ventilated stowage, and does not furnish or maintain preservative gases in connection with temperature controlled stowage, and the Carrier assumes no responsibility for loss of or damage to Goods arising in whole or in part from any lack of such stowage.

ii.  The Carrier shall not be liable for any loss of or damage to the Goods arising from latent defects, breakdown or stoppage of the refrigerating machinery, plant, insulation, or of any apparatus of the Container, Vessel, conveyance of other facilities, unless the Carrier shall have failed to exercise due diligence to maintain any such equipment ( other than Shipper-provided equipment ) in an efficient state. If the Goods have been packed into a refrigerated Container, by or on behalf of the Shipper, it is the obligation of the Shipper to stow the contents properly and set the thermostatic controls exactly; and the Carrier shall not be liable for any loss of or damage to the Goods arising out of or resulting from the Shipper's failure in such obligations. If the Carrier has packed the Goods into a refrigerated Container, and a temperature or temperature range has been disclosed to the Carrier by the Shipper or its authorized representative, Carrier will set the thermostatic control accordingly.

iii.  With respect to both Carrier-and Shipper-packed Containers, where Carrier has undertaken, by special agreement, to carry the Goods at a particular temperature or temperature range, the Carrier undertakes only that the refrigeration equipment shall perform within the operating specifications of the equipment and makes no warranty or agreement with respect to the actual temperature of any commodity, fruit, vegetable, meat, fish or any perishable Goods within the Container.

## 21. DELIVERY

i.  Any mention herein of parties to be notified of the arrival of the Goods is solely for information of the Carrier, and failure to give such notification shall not involve the Carrier in any liability nor relieve the Merchant of any obligation hereunder notwithstanding any custom or agreement to the contrary.

ii.  If no Place of Delivery is named on the face hereof, the Carrier shall be at liberty to discharge the Goods at the Port of Discharge, without notice at or onto any wharf, craft or place, on any day and at any time, whereupon the liability of the Carrier (if any) in respect of the Goods discharged as aforesaid shall wholly cease, notwithstanding any charges, dues or other expenses that may be or become payable, unless and to the extent that any applicable compulsory law provides to the contrary (in which case the terms and conditions of this Bill of Lading shall continue during such additional compulsory period of responsibility). The Merchant shall take delivery of the Goods upon discharge.

iii.  If a Place of Delivery is named on the face hereof, the Merchant shall take delivery of the Goods within the time provided for in the Carrier's Applicable Tariff (see Clause 2).

iv.  If the delivery of the Goods is not taken by the Merchant when and where the Carrier is entitled to call upon the Merchant to take delivery thereof, the Carrier shall be entitled, without notice, to unpack the Goods if packed in Container and/or to store the Goods ashore, afloat, in the open or under cover, at the sole risk of the Merchant. Such storage shall constitute due delivery hereunder, and thereupon the liability of the Carrier in respect of the Goods stored as aforesaid shall wholly cease, and the costs of such storage ( if paid or payable by the Carrier or any agent or Sub-Contractor of the Carrier ) shall forthwith upon demand be paid by the Merchant to the Carrier.

v.  If the Merchant fails to take delivery of the Goods within thirty days of delivery becoming due under Clause 21 ii) or; iii), or if in the opinion of the Carrier they are likely to deteriorate, decay, become worthless or incur charges whether for storage or otherwise in excess of their value, the Carrier may, without prejudice to any other rights which it may have against the Merchant, without notice and without any responsibility whatsoever attaching to him and at the sole risk and expense of the Merchant, sell, destroy or dispose of the Goods and apply any proceeds of sale in reduction of the sums due to the Carrier from the Merchant in respect of this Bill of Lading.

vi.  If, at the place where the Carrier is entitled to call upon the Merchant to take delivery of the Goods under Clause 21 ii) or iii), the Carrier is obliged to hand over the Goods into the custody of any customs, port or other authority, such hand-over shall constitute due delivery to the Merchant under this Bill of Lading.

vii.  Failure by the Merchant to take delivery of the Goods in accordance with the terms of this Clause, notwithstanding his having been notified of the availability of the Goods for delivery, shall constitute a waiver by the Merchant to the Carrier of any claim whatsoever relating to the Goods or the Carriage thereof.

viii.  In the event of the Carrier agreeing, at the request of the Merchant, to any change of destination, the terms of this Bill of Lading shall continue to apply until the Goods are delivered by the Carrier to the Merchant at the amended Port of Discharge or Place of Delivery, whichever is applicable, unless the Carrier specifically agrees in writing to the contrary.

ix.  The Merchant's attention is drawn to the stipulations concerning free storage time and demurrage contained in the Applicable Tariff.

x.  In the event that the consignee/receivers of the cargo require the Carrier to deliver the cargo at a port or place beyond the place of delivery originally designated in this Bill of Lading and the Carrier in its absolute discretion agrees to such further carriage, such further carriage will be undertaken on the basis that the Bill of Lading terms and conditions are to apply to such carriage irrespective of whether this Bill of Lading has been surrendered by the consignees/receivers or not, as if the ultimate destination agreed with the consignees/receivers had been entered on the front of this Bill of Lading as the place of delivery and is

thereby considered to be the place of delivery for the purposes of the clauses on the reverse side of this Bill of Lading.

## 22. TRANSHIPMENT BILLS OF LADING

If the Goods are to be transhipped via a connecting carrier to a destination point beyond the place of delivery stated on the face hereof, Carrier may, on behalf of the Merchant and acting solely as their agent, arrange for such beyond Carriage consistent with instructions received from the Merchant at their risk and expense. In such event, the Carrier may deliver the Goods to the connecting carrier without surrender of the Carrier's original, properly endorsed Bill of Lading and upon request by the Merchant, shall obtain the connecting carrier's acknowledgment that delivery of the Goods shall be made only upon surrender of the Carrier's original, properly endorsed Bill of Lading.

## 23. BOTH-TO-BLAME COLLISION

The Both-to-Blame Collision Clause published by the Baltic and International Maritime Council and obtainable from the Carrier or its agents upon request is hereby incorporated into this Bill of Lading.

## 24. GENERAL AVERAGE & SALVAGE

I.  General average shall be adjusted at any port or place at the option of the Carrier and subject to Clause 16 ii) in accordance with the York Antwerp Rules 1994, provided that where an adjustment is made in accordance with the law and practice of the United States of America or of any other country having the same or similar law or practice the following clause shall apply:-
    New Jason Clause
    a.  in the event of accident, damage, peril or disaster, before or after the commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which, or the consequence of which, the Carrier is not responsible, by statute, contract, or otherwise, the Goods and the Merchant shall jointly and severally contribute with the Carrier in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the Goods.
    b.  if a salving Vessel is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving Vessel belonged to strangers.
II.  If the Carrier delivers the Goods without obtaining security for general average contributions, the Merchant by taking delivery of the Goods, undertakes personal responsibility to pay such contributions and to provide such cash deposit or other security for the estimated amount of such contributions as the Carrier shall reasonably require.
III.  The Carrier shall be under no obligation to exercise any lien for general average contribution due to the Merchant.
IV.  In the event of the Master in his sole discretion or in consultation with owners considering that salvage services are needed, the merchant agrees that the Master may act as his agent to procure such services to Goods and that the Carrier may act as his agent to settle salvage remuneration, without any prior consultation with the Merchant.

## 25. WAR RISKS; GOVERNMENTAL ORDERS

The Carrier shall have liberty to carry Goods declared by any belligerent to be contraband and persons belonging to or intending to join the armed forces or governmental service of any belligerent; to sail armed or unarmed and with or without convoy; and to comply with any orders, requests or directions as to loading, departure, arrival, routes, ports of call, stoppage, discharge, destination, delivery or otherwise, howsoever given by the government of any nation or department thereof or any Person acting or purporting to act with the authority of such government or of any department thereof, or by any committee or Person having, under the terms of the war risk insurance on the Vessel, the right to give such orders, requests or directions. Delivery or other disposition of the Goods in accordance with such orders, requests or directions shall constitute performance of the Carrier's delivery obligations under the terms of this Bill of Lading, and all responsibility of the Carrier, in whatever capacity, shall terminate upon such delivery or other disposition.

## 26. VARIATION OF THE CONTRACT

No servant or agent of the Carrier shall have the power to waive or vary any term of this Bill of Lading unless such waiver or variation is in writing and is specifically authorized or ratified in writing by the Carrier.

## 27. VALIDITY

In the event that anything herein contained is inconsistent with any applicable international conventional or national law which cannot be departed from by private contract, the provisions hereof shall to the extent of each inconsistency but no further be null and void.

## 28. LAW AND JURISDICTION

i.  Governing Law
    Insofar as anything has not been dealt with by the terms and conditions of this Bill of Lading, Singapore law shall apply. Singapore law shall in any event apply in interpreting the terms and conditions hereof.
ii. Jurisdiction
    All disputes relating to this Bill of Lading shall be determined by the Courts of Singapore to the exclusion of the jurisdiction of the courts of any other country provided always that the Carrier may in its absolute and sole discretion invoke or voluntarily submit to the jurisdiction of the Courts of any other country which, but for the terms of this Bill of Lading, could properly assume jurisdiction to hear and determine such disputes, but shall not constitute a waiver of the terms of this provision in any other instance.
iii. Notwithstanding Clause 28 i) and ii), if Carriage includes Carriage to, from or through a port in the United States of America, the Merchant may refer any claim or dispute to the United States District Court for the Southern District of New York in accordance with the laws of the United States of America.

Print    Close